FILED
APR 1 2 2007
4-12-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MERCATUS GROUP LLC,

Plaintiff,

v.

LAKE FOREST HOSPITAL, VILLAGE of LAKE BLUFF, MICHAEL PETERS, DAVID BARKHAUSEN, and RICK LESSER

Defendants.

07CV2042
JUDGE LEFKOW
MAGISTRATE JUDGE NOLAN

**COMPLAINT**

Plaintiff Mercatus Group LLC ("Mercatus"), by its attorneys, Winston & Strawn LLP, alleges:

**NATURE OF ACTION**

1. This is a case about Lake Forest Hospital's attempt to monopolize the diagnostic imaging market in eastern Lake County, Illinois and to exclude unlawfully Lake Forest Hospital's competitor, Mercatus.

2. Lake Forest Hospital sought to obtain monopoly power through anti-competitive activity, and among other things, abused the Village Board of Lake Bluff zoning process through sham proceedings with the intent to injure its competitor Mercatus. Further, Lake Forest Hospital conducted a campaign of disparagement, in public and private, against Mercatus.

3. Although the defendant is a non-profit institution it has substantial assets (in excess of $100 million) and acted aggressively to attempt to exclude competitors. To this

end, Lake Forest Hospital made several misrepresentations, both to public and private parties, and overstated the impact of the competition in order to create unfounded fears that regular, lawful competition from Mercatus would negatively affect Lake Forest Hospital and the community. Lake Forest Hospital's activities described below injured plaintiff Mercatus Group LLC ("Mercatus") and consumers resulting in reduced services and higher prices.

4. Defendant Michael Peters, M.D. is both a member of the Village of Lake Bluff Board of Trustees and works as a full-time physician at Lake Forest Hospital. Defendants Peters, David Barkhausen, Rick Lesser furthered the anti-competitive actions of the Hospital by denying Mercatus due process and equal protection. Further, on information and belief, these three defendants held secret meetings, in violation of the Illinois Open Meetings Act, to further their denials of constitutional rights to plaintiff Mercatus.

5. The plaintiff Mercatus sought to compete with Lake Forest Hospital. Mercatus develops and runs "physician centers" that compete with hospitals like Lake Forest Hospital in the delivery of diagnostic imaging services. In 2004, Mercatus began plans to build a "physician center" in Lake Bluff, Illinois (the "Mercatus Center") approximately three miles away from Lake Forest Hospital. The Mercatus Center would drive down health care prices, specifically the prices paid by consumers for diagnostic imaging services, and increase access to health care.

6. In late 2006, the Mercatus Center's "site plan" for the construction of a medical office building at the corner of Route 176 and Route 41 in the Village of Lake Bluff was approved by the Village of Lake Bluff Architectural Review Board and needed only final approval from the Village, which is typically a formality. Prior to final approval, Lake Forest Hospital, in connection with the Village of Lake Bluff and the named defendants intervened

through anti-competitive means to thwart competition. First, Lake Forest Hospital misrepresented information to both the public and to private parties regarding Mercatus, the proposed physician center, and the economic impact to Lake Forest Hospital. Further, Lake Forest Hospital, the Village, and the individual defendants forced a series of sham and unnecessary hearings--hearings that ran afoul of relevant law and procedures--that were designed to prevent the Mercatus Center from competing with Lake Forest Hospital. Finally, Lake Forest Hospital interfered with Mercatus's existing business relationships by intimidating physicians that had agreed to work at the proposed center and causing those physicians to back out of their commitments to Mercatus and the proposed center. As a result of these anticompetitive actions, Mercatus was substantially damaged.

7. Further, the Village of Lake Bluff and defendants Peters, Barkhausen, and Lesser participated in this scheme to deprive Mercatus of fair access to governmental process by their active participation in the sham proceeding. These defendants manipulated Village approval for the Mercatus Center and subjected Mercatus to an unnecessary, illegal hearing on whether Mercatus required a "special use" permit to build in Lake Bluff for the exact purpose for which the land was already zoned, i.e., a medical office building.

8. Moreover, these defendants denied Mercatus due process by meeting in secret in violation of the Illinois Open Meetings Act and through other procedural irregularities described below. Those secret meetings defined the agenda that Mercatus was to be subject to, rather than having it defined at an open meeting. Having defined the agenda, defendants denied Mercatus due process and did not allow Mercatus to be heard at Village Board meetings.

9. Finally, these defendants acted in a manner harmful to Mercatus, to the community, to consumers, and to competition, by their decisions related to the Mercatus Center.

Namely, the Village and the named defendants acted upon the Mercatus Center matter without any significant diligence and/or independent validation of the purported grounds for their actions. As a result, Mercatus is substantially damaged.

**PARTIES**

10. Plaintiff Mercatus is a Delaware limited liability company with its principal place of business in Vernon Hills, Illinois. Mercatus competes with hospitals, like Defendant Lake Forest Hospital, by aggregating at a single office location independent physician practices into "physician centers." Mercatus delivers outpatient services to patients such as diagnostic imaging services like nuclear imaging, magnetic resonance imaging ("MRI"), and computed tomography scans ("CT scans").

11. Defendant Lake Forest Hospital (the "Hospital") is an Illinois corporation with its principal place of business in Lake Forest, Illinois. Lake Forest Hospital provides medical offices and diagnostic imaging services (including nuclear imaging, MRI's, and CT scans).

12. Defendant Village of Lake Bluff is an Illinois municipal corporation located in Lake County, Illinois. The Village of Lake Bluff has its principal place of business in Lake Bluff, Illinois. The Village of Lake Bluff acts through the Lake Bluff Village Board of Trustees.

13. Defendant Michael Peters, M.D. ("Trustee Peters"), an individual, is a member of the Lake Bluff Village Board of Trustees and is full-time physician Lake Forest Hospital and resides in Lake Bluff, Illinois.

14. Defendant David Barkhausen ("Trustee Barkhausen"), an individual, is a member of the Lake Bluff Village Board of Trustees and resides in Lake Bluff, Illinois.

15. Defendant Rick Lesser ("Trustee Lesser"), an individual, is a member of the Lake Bluff Village Board of Trustees and resides in Lake Bluff, Illinois.

## JURISDICTION AND VENUE

16. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1988; 15 U.S.C. §§ 1, 2 and 15; and 28 U.S.C. §§ 1331 and 1367, as well as the United States Constitution. The conduct described in this complaint impacted interstate commerce.

17. Venue lies in this District under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND FACTS

### Mercatus plans to open the Mercatus Physician Center

17. Mercatus is in the business of developing and running "physician centers." A physician center is a medical office building that includes comprehensive medical services and on-site business services for physicians. Physician centers enable small medical practices to increase revenue, reduce costs for patients and insurers, and provide comprehensive care. Some of the services provided by physician centers include the ability to deliver diagnostic imaging services, such as nuclear imaging, CT scans, and/or MRI, on-site. Although physicians approve of the physician center business model, some hospitals, like Lake Forest Hospital, do not like it because it competes with their outpatient services like diagnostic imaging.

18. Mercatus physician centers offer very competitive prices for services like on-site diagnostic imaging. Lake Forest Hospital also provides on-site diagnostic imaging services, but Lake Forest Hospital charges significantly higher rates than can be charged by Mercatus.

19. In March 2004, Mercatus began plans to open a physician center in Lake Bluff, Illinois (the "Mercatus Center") and in Vernon Hills. Mercatus opened the Vernon Hills center in October 2005. The Mercatus Center (in Lake Bluff) would be located on suitable land in Lake Bluff and was targeted to open in June 2007.

20. From March 2004 through April 2006, Mercatus met with physicians in the areas of Lake Bluff and Lake Forest to discuss practicing in the Mercatus Center. By April 2006, Mercatus had signed Group Practice Letter Agreements with two large internal medicine practices: North Suburban Medical Associates, located in Lake Bluff and Lake Forest Medical Associates, located in Lake Forest at the Lake Forest Hospital's Westmoreland campus. By these letter agreements, the medical practices committed to working at the Mercatus Center.

21. Mercatus also communicated with local hospitals to attempt to partner with these hospitals to deliver health care efficiencies. In fact Mercatus met with Lake Forest Hospital executives on five separate occasions to discuss partnering at the Mercatus Center.

22. Also, by early 2006, Mercatus had a pre-existing relationship with local hospital and healthcare network Evanston Northwestern Healthcare ("ENH"). ENH and Mercatus were partners in Mercatus' Vernon Hills Physician Center and had planned to partner in the construction of four additional physician centers, including the one in Lake Bluff.

**Mercatus contracts for the Shepard Chevrolet Land**

23. In connection with its plan to open the Mercatus Center, Mercatus sought appropriately zoned real estate in Lake Bluff. Mercatus sought real estate that was approved for medical office building use and that had a favorable, convenient location for the future patients of the Mercatus Center.

24. Mercatus identified land controlled by George Shepard, located at the southwest corner of U.S. Route 41 and Route 176 (the "Shepard Land"). The Shepard Land already featured an automotive sales dealership on part of the land called Shepard Chevrolet. Mercatus intended to use another portion of the Shepard Land for its business. Mercatus signed a letter of intent to lease a portion of this land in December 2005.

25. The Shepard Land was zoned for the medical office use contemplated here. The Shepard Land is zoned "L-2" under Lake Bluff zoning ordinances. According to these ordinances, any use that is permissible in the "Office and Research District" is also permissible in the L-2 zone zoning district. The portion of the Lake Bluff ordinances relating to the Office and Research District permits "Offices," which includes "Offices and Clinics of Medical Doctors."

**Mercatus approaches the Lake Bluff Village Board of Trustees**

26. After entering into a contract for the lease of part of the Shepard Land and contacting several doctors about their interest in the proposed Mercatus Center, Mercatus approached the Village of Lake Bluff to investigate what, if any, steps needed to be taken to gain approval for the Mercatus Center.

27. In March 2006, Mercatus attempted to meet with each of the Trustees to discuss its plans to build the Mercatus Center. Mercatus conducted meetings with several Village trustees. Trustee Peters, who works as a medical doctor at Lake Forest Hospital, refused to meet with Mercatus despite repeated requests for such a meeting.

28. At this time, the Village President and a number of Trustees were enthusiastic supporters of the Mercatus Center in Lake Bluff. Beginning in March, the Village President had numerous conversations with Mercatus to guide Mercatus through the Lake Bluff

Village approval. The Village President, Christine Letchinger, purportedly was a strong supporter of the Mercatus Center.

29. Mercatus presented plans for the Mercatus Center at the April 10, 2006 Board of Trustees meeting. Mercatus answered questions from the Trustees and interested parties about the design of the site and related traffic issues.

30. However, representatives of Lake Forest Hospital also attended the April 2006 meeting and made numerous misrepresentations. At this meeting, representatives of the Hospital stated that the Mercatus Center would extract profitable services from Lake Forest Hospital and would jeopardize the Hospital's charitable services, which were represented by the Hospital as $25 million in charitable services each year. Lake Forest Hospital further stated at this meeting that a vote by the Board in favor of the Mercatus Center would be a vote against Lake Forest Hospital.

31. Even though Mercatus approached Lake Forest Hospital numerous times, Lake Forest Hospital refused all requests by Mercatus to partner with the Lake Bluff Mercatus Center for the delivery of health care services. However, Lake Forest Hospital expressed its willingness to partner with Mercatus in other geographic areas outside of Lake Bluff and/or Lake Forest.

32. At the April 2006 meeting, the question of whether the Mercatus Center would need a "special use" permit was never raised.

33. According to the relevant Lake Bluff ordinances, Mercatus needed only "site plan approval" from the Village of Lake Bluff to construct a building in the L-2 zone. The Mercatus Center site plan was first to be presented to the Village's Architectural Board of

Review. The Architectural Board of Review would then make a recommendation for approval to the Village Board of Trustees.

**Mercatus is informed that it needs "special use" permit**

34. After the April meeting, Mercatus continued to meet with Village trustees to discuss concerns related to specific aspects of the site plan. Numerous trustees expressed their support for the Mercatus Center as a low-cost, high-quality alternative to Lake Forest Hospital.

35. However, Trustee Lesser told Mercatus that he would not support the Mercatus Physician Center in Lake Bluff because of the potential to harm Lake Forest Hospital. Trustee Lesser told Mercatus that, in his view, even a nominal reduction in revenue to the Hospital caused him to not support that Mercatus plan.

36. In approximately June 2006, after Lake Forest Hospital objected to the Mercatus Center, the Village informed Mercatus for the first time that it would need a "special use permit" to build the Mercatus Center. The Village asserted that site plan approval for the Mercatus Center was contingent on special use permission. This "special use" permit was only raised as a requirement after Lake Forest Hospital raised its alleged concerns about Mercatus as competition.

37. The Shepard Land was zoned L-2. The Shepard Land was governed by a Special Use Permit (the "Shepard SUP") dated 1972 (and amended in 1976 and 1979) that was granted to allow a partition of the Shepard Land to be used for automotive sales, contrary to that land's zoning. However, the Shepard Land is zoned L-2, so Mercatus did not need a "special use" permit from the Village to construct a medical office building.

38. Mercatus continued to pursue site plan approval. Before the Board of Trustees reviews a site plan, the site plan is reviewed by the Lake Bluff Architectural Board of

Review. The Architectural Board of Review is specifically designated by Lake Bluff to advise the Village about commercial design and development matters. Mercatus presented its site plan to the Board of Review in September 2006. The Board of Review unanimously approved the Mercatus Center site plan.

39. Mercatus next sought to obtain Village Board of Trustees approval of the Mercatus Center site plan. After the Board of Review approves a site plan and so recommends to the Board of Trustees, a two-thirds vote of the Board of Trustees is required to reject the site plan. Further, according to Lake Bluff ordinances, 10-1-9(E)(1) - (8), the Village Board can only disapprove a site plan on the basis of "written findings" directed to the following standards: (1) the site plan application is materially incomplete; (2) the proposed site plan fails to meet applicable zoning standards; (3) the proposed site plan is detrimental to the use and enjoyment of the surrounding property; (4) the proposed site plan creates undue traffic congestion or safety hazards; (5) the site plan landscaping does not provide adequate shielding from or for nearby uses; (6) the proposed site plan creates unreasonable drainage or erosion problems; (7) the proposed site plan places unwarranted burdens on utility systems; and (8) restrictions related to the Central Business District [not applicable to the Mercatus site plan]. Based on the approval of the Architectural Board of Review and the limited considerations of the Village Board, the site plan approval should have been virtually automatic.

**Mercatus is subjected to sham proceedings before Lake Bluff Board**

40. In connection with both site plan approval and with the sham "special use" approval, Mercatus was a victim of a deliberate, anti-competitive and illegal campaign by Lake Forest Hospital and other various co-conspirators to restrain the Mercatus business. In connection with the Mercatus Center, Lake Forest Hospital made a series of public and private

misrepresentations about the Mercatus Center, acted in an anti-competitive manner, and engineered a sham and needless "special use" vote--all in order to obtain monopoly power and kill nascent competition from the fledgling Mercatus Center.

41. Lake Forest Hospital misrepresented several facts in public sessions and, on information and belief, outside of Board meetings, to the Village Board, including that the Mercatus Center would cause a $2 million loss to Lake Forest Hospital, drive the Hospital out of business, and prevent it from providing charity care. All these statements were demonstrably false and/or made with reckless disregard for their veracity. These actions injured Mercatus in the sham proceeding described below and outside of the Board hearings.

42. Lake Forest Hospital also made false statements outside of the political forum, including, on information and belief, that Walgreen's wanted to purchase the Shepard Land for retail use. However, no such offer or communication was ever made by Walgreen's.

43. As described further below, all Defendants, including Lake Forest Hospital, subjected Mercatus to a sham proceeding by orchestrating a separate vote on a so-called "special use" of the Shepard Land. Defendants asserted that Mercatus site plan approval was contingent on the Board granting Mercatus a special use permit. All Defendants knew or reasonably should have known that Mercatus was not required to have the Village Board approve a special use for the Shepard Land and that Mercatus only needed site plan approval to build on the Shepard Land. Further, the Village of Lake Bluff encouraged Mercatus to "work around" the special use permit because Mercatus "had the votes" to pass.

44. As described below, the Defendants used the sham "special use" vote to orchestrate extended hearings with the intent to impede right to compete of Mercatus in the relevant market. These hearings prolonged and confused the proceedings for Mercatus site plan

approval (which cost Mercatus hundreds of thousands of dollars) while the individual defendants engaged in backroom dealing to thwart Mercatus's plans.

45. Lake Forest Hospital engaged in further anti-competitive conduct to injure Mercatus. In September 2006, the Hospital met with North Suburban Medical Associates and Lake Forest Medical Associates, the two physician practice groups who had signed agreements to practice at the Mercatus Center. Lake Forest Hospital pressured those groups to alter the terms of their agreements with Mercatus. Lake Forest Hospital had substantial influence over the doctors' decisions because the doctors held valuable staff privileges at the Hospital.

46. On information and belief, Lake Forest Hospital representatives made threatening telephone calls to other physicians that were considering practicing at the Mercatus Center. These phone calls prevented the physicians from advocating the Mercatus plan in public forums like the Village Board meetings.

47. On information and belief, Lake Forest Hospital itself offered to purchase the Shepard Land in an attempt to dissuade Shepard from proceeding with the Mercatus contract. This offer of purchase was made to derail the Mercatus business plan.

48. Even now, Lake Forest Hospital has continued its anti-competitive actions because of the perceived threat that the Mercatus lower-cost model presents to Lake Forest Hospital's business. In early 2007, a Lake Forest Hospital employee called another hospital, Advocate Good Shepherd Hospital in Barrington, Illinois, to boast of its actions in Lake Bluff. The Hospital employee called to warn Advocate Good Shepherd about Merctaus, as Mercatus had recently begun plans to build a physician center in Barrington. The Hospital employee advised Advocate Good Shepherd not to work with Mercatus.

**Mercatus Center does not receive a vote on the site plan**

49. The Mercatus Center site plan was to be voted on at the October 23, 2006 meeting of the Village Board. Before this meeting, Village President Letchinger assured Mercatus that there were enough votes to secure passage of the Mercatus Center site plan. However, defendants conspired before, during and after the meeting to deprive Mercatus of due process and adversely impact the fairness of the proceeding.

50. At the October 23 meeting, rather than voting on the site plan--which is all that was required of the Board according to the laws of Lake Bluff--the Board of Trustees voted to separate the issues of "special use" and the site plan.

51. The question of whether Mercatus would be subject to the Shepard SUP (and therefore require a new special use permit) was never raised at the April 10 meeting, when Mercatus was before the Village Board. Instead, only after Lake Forest Hospital began its campaign to block Mercatus did the Village mandate that Mercatus obtain "special use" approval.

52. It was outside of the Board's authority to require a vote on the special use. The Village's proffered reason for this vote was the pre-existing Shepard SUP, however the Village misrepresented the Shepard SUP to require that any other use of the Shepard Land be approved pursuant to another special use permit. There was no need for a special use permit because Mercatus intended to use the Shepard Land as a permitted use under the current L-2 zoning of the Shepard Land. Therefore, under Lake Bluff law, the Board only had to right to vote on the Mercatus site plan and could only reject that site plan for the reasons enumerated in Lake Bluff ordinances 10-1-9(E)(1) - (8).

53. However, rather than proceed to a site plan vote, the Village, with the urging and assistance of Lake Forest Hospital and the other defendants, defined a separate agenda and forced a vote as to whether the project should be approved as a "special use." This had the impact of re-writing the zoning code without due process to Mercatus.

54. Through these sham proceedings, the Village Trustees gave themselves unfettered discretion to discuss what they believed was the best use of the Shepard Land. By doing so, defendants further denied Mercatus due process of law by rejecting the Mercatus site plan on arbitrary and capricious grounds and the acts of the trustees were ultra vires.

55. Trustee Peters commented extensively at the meeting that the Board was authorized to review Mercatus "special use," despite his conflict of interest as a doctor at Lake Forest Hospital, a competitor of Mercatus. In so doing, Peters ensured that Mercatus would be subjected to this sham proceeding.

56. After the Board approved this two-vote procedure, representatives of Mercatus presented facts and data concerning the economic benefits of the Mercatus Center, the traffic issues related to the Mercatus Center, and the environmental impact of the construction of the Mercatus Center.

57. Mercatus presented the Board with detailed information on the potential economic impact of the Mercatus Center. However, Lake Forest Hospital did not respond to these economic arguments and only asserted that competition would harm the Hospital, further indicating the Hospital's anti-competitive intent.

58. The CEO of Lake Forest Hospital, Tom McAfee, spoke on behalf of the Hospital and urged the Board to vote against Mercatus so as to further the Hospital's own interests. McAfee's comments did not present the Board with any relevant, rational grounds

related to the proposed site plan, or even to a potential special use permit, but instead were based on Mercatus' purported impact on Lake Forest Hospital's business--not a ground set forth under applicable law.

59. McAfee stated that approval of the Mercatus Center would cause the Hospital to lose $2,000,000 and that "$2,000,000 is a lot of nurses." In a written letter to the Village President McAfee had stated that the Mercatus Center would cause a loss of $2.3 million to the Hospital in lost imaging business.

60. According to McAfee, the Hospital provided extensive charity care and extensive care to patients who cannot pay medical bills.

61. Trustee Peters, still refusing to recognize his conflict of interest, stated that Mercatus and Lake Forest Hospital were not on a level playing field from the standpoint of competition.

62. Despite these objections at the October meeting, Mercatus received approval to develop and/or use the Shepard Land (in connection with the Shepard SUP) by a vote of 4-3.

63. Trustee Barkhausen voted against the Mercatus Center because of its perceived impact on Lake Forest Hospital. Barkhausen was "moved by testimony of Lake Forest Hospital employees" rather than any lawful reason, and as such his decision making was ultra vires, or without lawful government purpose.

64. Trustee Peters voted on this issue, against Mercatus, despite his conflict of interest described above.

65. Trustee Lesser voted against Mercatus at the October 23, 2006 meeting purportedly because of the competitive impact of Mercatus on Lake Forest Hospital. Lesser had stated that even a nominal reduction in Lake Forest Hospital's revenues was unacceptable.

66. During the October 23, 2006 meeting, on information and belief, Trustees Peters, Barkhausen, and Lesser met outside the Board's meeting room to consider their options on how to force a re-vote on the special use question. This meeting was in violation of the Illinois Open Meetings Act.

67. After the approval of the special use, the Board moved to adopt the Mercatus site plan. However, while this motion was pending, Trustee Lesser moved to table the discussion to the next meeting because of the late hour. The Board voted on the motion to table, and it passed 6-0. Notwithstanding the motion to table, the Village Board continued the October 23 meeting after this vote. Trustee Peters voted on this issue, despite his conflict of interest. Therefore, the vote on the site plan (the only required vote) was tabled to the next meeting.

**Village Board reconsiders its "special use" vote and denies site plan approval**

68. Between October 23 and November 13, Lake Forest Hospital pressured the Lake Bluff Board of Trustees to proceed with sham proceedings forcing Mercatus to face a re-vote on the "special use" approval and forcing votes against the Mercatus Center.

69. For example, Lake Forest Hospital sent a letter to the Lake Forester newspaper, signed by its President and CEO, that ran on November 9, 2006. This letter asserted that the Mercatus Center would provide redundant care to area residents and that Mercatus would jeopardize Lake Forest Hospital revenues. Through the letter, Lake Forest Hospital "implored" the Lake Bluff Board of Trustees to vote against the Mercatus Center. Through this and other

similar conduct, Lake Forest Hospital injured its competitor Mercatus, separate and apart from the sham special use vote.

70. On information and belief, the Trustees also violated the Illinois Open Meetings Act by discussing how the trustees were going to vote during a secret meeting and discussions separate from the entire Board of Trustees. The Trustees met in private immediately before the next meeting of the Board--on November 13, 2006--to discuss the re-consideration of the October 23 special use vote.

71. At this secret meeting, on information and belief, Trustees Peters, Barkhausen, and Lesser requested that Trustee Marilyn Shineflug move for a vote to re-consider the special use permit. The Village President indicated in her comments at the very beginning of the November 13 meeting that the special use vote was going to be re-considered. Indeed, despite having approved the project in October, Trustee Shineflug moved to reconsider the special use vote.

72. At the November 13 meeting, the motion to re-consider carried 5-0, with Trustee Peters abstaining this time, after ensuring that the sham proceedings would continue. The motion to consider the special use was then tabled to the next meeting.

73. Further, at the November 13 meeting, Mercatus representatives were not allowed to speak in defense of the site plan to further object to these sham proceedings. Mercatus expressly requested to be heard but was informed that comment was at the discretion of the Village Board. Prior to this meeting, the Village repeatedly assured Mercatus that it would receive a fair hearing and that, eventually, the Mercatus Center would be approved.

74. Soon after the November meeting, but before the January 2007 re-vote, Trustees Barkhausen and Shineflug posted on their campaign website under the heading "facts"

that it was "certain" that special use permission would not be granted--even though no vote denying the special use or site plan Mercatus Center had been held at this time, and the special use was approved at the October meeting. It is clear that defendants and the Village Board had discussions since the October meeting in violation of the Illinois Open Meetings Act.

75. At the Village Board meeting on January 22, 2007, the Board of Trustees voted to deny Mercatus "special use" of the Shepard Land by a vote of 5-0 (Trustee Peters abstained). This vote was conducted over the objection of Mercatus, who noted that the property was already zoned for this use, and that Lake Bluff law did not require a special use vote. The Shepard Land was already zoned for medical office building use.

76. Also at the January 22, 2007 meeting, Lake Forest Hospital re-iterated its argument that Mercatus Center may cause the Hospital to lose millions of dollars and that money would be drawn from patient care.

77. Several trustees admittedly changed their votes at the January 2007 meeting from the October 2006 meeting because of the purported impact of the Mercatus Center on Lake Forest Hospital. At the January 2007 meeting, one trustee even explained his vote against Mercatus as: "we don't need the threat to the hospital." Several trustees admitted that they changed their votes because of the unique opportunity to vote on the "special use." On information and belief, the trustees changed their vote after receiving pressure from Trustees Peters, Barkhausen, and Lesser, and Lake Forest Hospital.

78. After the vote on the so-called "special use," the Village Board of Trustees voted on the Mercatus site plan. Mercatus reminded the Village Board that the Architectural Board of Review approved the Mercatus Center site plan unanimously. No evidence to the contrary was presented in criticism of Mercatus's site plan.

79. However, as the Lake Bluff Village Attorney stated during the January meeting, once the "use" permit was denied for the land, site plan approval was effectively impossible to grant. The Village Board voted to draft a resolution that denied the Mercatus site plan because of the "special use vote" and without consideration of the listed criteria from Lake Bluff Ordinance 10-1-9(E).

80. In a further charade and sham, the Resolution drafted by the Village did not conform to the evidence presented. The denial of the site plan and the denial of the "special use" for the Shepard Land were formally described in a February 12, 2007 Resolution prepared by the Village. This Resolution incorrectly represented Lake Bluff law as it stated that two separate votes were required for approval--the special use vote and the site plan vote.

81. The Resolution further listed so-called "findings of fact" with regard to the site plan approval. The Resolution states that the proposed development was prohibited based on the Board's prior vote to deny the special use. As evidence that Lake Bluff attempted to conceal its sham, the written Resolution notably omits the October 23, 2006 approval and omits the plan to "table" site plan approval to the November 2006 meeting.

82. At the time of the filing of this Complaint, Mercatus has not received site plan approval to build the Mercatus Center on the Shepard Land.

**Mercatus was substantially injured**

83. As described above, the actions of defendants, both in and out of Lake Bluff hearings, have injured Mercatus. Several physicians who had previously committed to work at the proposed Mercatus Center are no longer committed to the project, or to Mercatus.

84. Mercatus was injured by its failed investment of over $100,000 on architectural, engineering and other professional services related to obtaining Lake Bluff's approval of its site plan.

85. Mercatus lost millions of dollars in revenue it would have received from operating the Mercatus Center, as well as the value of the Mercatus Center itself.

86. The inaccurate and disparaging information communicated by Defendants, including Lake Forest Hospital, continues to make it difficult for Mercatus to recruit physicians in the Lake Bluff area, thus damaging its business model.

87. Further, as described above, Mercatus began plans in 2006 to open a physician center in Barrington, Illinois. The financial losses on the Lake Bluff project delayed the Barrington physician center and the damage to Mercatus' reputation in the medical community also delayed the project.

88. Further injuring Mercatus and demonstrating the anti-competitive intent of Lake Forest Hospital, the Hospital placed at least one telephone call to Advocate Good Shepherd Hospital in Barrington to warn Advocate Good Shepherd and advised Good Shepherd not to work with Merctaus.

89. As stated earlier, Mercatus and ENH agreed to develop multiple physician centers. However, and further injuring Mercatus, as a result of the derailment of the Mercatus Center in Lake Bluff, ENH ended this relationship.

90. Because of the substantial investment in this project and its eventual denial, Mercatus has been injured in its ability to procure funding for other, similar ventures.

91. As demonstrated above, Mercatus has been injured by the sham proceeding and separately by actions outside of the Board hearing.

92. Consumers have been injured by the resulting lack of competition that Mercatus would have provided and as a result have fewer choices for diagnostic imaging services and pay more for such services than they would have paid had defendants not engaged in anti-competitive behavior.

**COUNT I**
**(Attempted Monopolization -- Directed at Defendant Lake Forest Hospital)**

93. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-92 as if set forth fully in this Count I.

94. The relevant geographic product market to analyze Lake Forest Hospital's monopolization is eastern Lake County, Illinois. Specifically, this geographic area stretches from the northern boundary of Highland Park (to the south), to Interstate 94 (to the west), to the southern boundary of North Chicago (to the north) and to Lake Michigan (to the east). This geographic area contains a significant number of physicians who refer patients to diagnostic imaging facilities.

95. The relevant product market is "diagnostic imaging services" including magnetic resonance imaging, computerized tomography, nuclear medicine, radiography, and ultrasonography, sold to patients of physicians whose offices are located in the geographic area.

96. Lake Forest Hospital's anti-competitive conduct, as described above, in violation of 15 U.S.C. § 2, is a willful attempt to acquire and exert monopoly power. Lake Forest Hospital has excluded competitor Mercatus from lawfully competing by, *inter alia*:

- unlawfully blocking Mercatus site plan approval with the Village Board by knowingly, and without basis, engaging and orchestrating a sham proceeding before the Village of Lake Bluff;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, directly to the Village Board during that Board's meetings;
- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, outside of the political context, in connection with the Mercatus site plan approval;
- establishing a pattern of abuse of the government processes by the aforementioned conduct;
- interfering with the existing physician relationships Mercatus had established for the Mercatus Center;
- interfering with prospective physician relationships Mercatus attempted to establish in the community;
- interfering with Mercatus' relationship with ENH;
- attempting to purchase the Shepard Land and falsely advising Shepard that Walgreens was interested in purchasing the Shepard Land;
- suggesting agreements in restraint of trade with Mercatus in other markets outside eastern Lake County so as to not compete in the Lake Forest/Lake Bluff geographic area; and
- contacting Advocate Good Shepard Hospital to "warn" that hospital about Mercatus.

97. Lake Forest Hospital is able to charge supra-competitive prices for diagnostic imagining services as a result of its anti-competitive actions. The Hospital's prices for these imaging services were significantly higher than those that would be charged at the proposed Mercatus Center. Additionally, denying Mercatus access to the market has reduced choice for diagnostic imaging services.

98. The sham proceedings and the campaign of disparagement undertaken by Lake Forest Hospital, the Village of Lake Bluff, and the other defendants were not valid government action. The proceeding that purported to require a "special use" vote was baseless. Rather, these actions were intended to interfere with the activities of the Hospital's competitor, Mercatus and to harass Mercatus.

99. Mercatus has been injured by the governmental process to which Lake Forest Hospital subjected it before the Village of Lake Bluff. Additionally, Mercatus was injured by these activities notwithstanding the Lake Bluff Board's vote to deny its site plan approval on January 22, 2007. Lake Forest Hospital intended to injure Mercatus via these activities and not just by the January 2007 vote.

100. Mercatus was injured by Lake Forest Hospital's campaign of disparagement, *inter alia*: by Lake Forest Hospital's interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates; by the Hospital's interference with other physicians; by the Hospital's interference with the Mercatus relationship with ENH; by the Hospital's interference with Mercatus attempts to build a physician center in Barrington; and by damaging Mercatus's ability to procure funding.

101. Mercatus was injured by the false statements made by Lake Forest Hospital to the Village of Lake Bluff Board of Trustees. The Village only had the authority to review the site plan approval for certain considerations as enumerated by statute.

102. Mercatus was injured by the false statements made by Lake Forest Hospital outside the Village Board through the Hospital's campaign of disparagement, including, but not limited to, the Hospital's statements to physicians.

103. Lake Forest Hospital acted with specific intent to monopolize the diagnostic imaging markets.

104. Through its actions described supra, Lake Forest Hospital created a dangerous probability of achieving a monopoly, in violation of 15 U.S.C. § 2.

105. The conduct described in this complaint, supra, impacted competition. The conduct described in the complaint impacted interstate commerce.

106. Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

**COUNT II**

**(Section 1 Conspiracy in Restraint of Trade -- Directed at Defendant Lake Forest Hospital)**

107. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-107 as if set forth fully in this Count II.

108. Lake Forest Hospital entered into a conspiracy with other, unnamed defendants, in restraint of trade, in violation of 15 U.S.C. §1.

109. Lake Forest Hospital conspired with these unnamed co-conspirators in an attempt to increase Lake Forest Hospital's market power in the relevant market. Defendants' conduct has unreasonably restrained trade and has had the impact of allowing the Hospital to

raise prices and exclude competitors, thus harming consumers who utilize and pay for diagnostic imaging services.

110. Lake Forest Hospital's anti-competitive conduct is described above. Additionally, Lake Forest Hospital and their co-conspirators forced Mercatus to be subject to an unnecessary sham proceeding to face a vote on the "special use" permit.

111. Lake Forest Hospital and their co-conspirators, on information and belief, orchestrated secret meetings, in violation of the Illinois Open Meetings Act, to set the agenda for Mercatus approval. For example, Trustee Barkhausen posted on his website that it was "certain" that the Mercatus Center would not be approved--a month before the vote was even cast and despite the project's approval two months earlier.

112. Lake Forest Hospital and their co-conspirators denied the Mercatus site plan approval on grounds relating to stifling competition in the diagnostic imaging market, and failed to approve or disapprove the site plan based on proper statutory considerations.

113. Lake Forest Hospital is able to charge supra-competitive prices for diagnostic imagining services as a result of its anti-competitive actions. The Hospital's prices for these imaging services were significantly higher than those that would be charged at the proposed Mercatus Center. Additionally, denying Mercatus access to the market has reduced choice for diagnostic imaging services.

114. Mercatus was injured by Lake Forest Hospital's campaign of disparagement, *inter alia*: by Lake Forest Hospital's interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates; by the Hospital's interference with other physicians; by the Hospital's interference with the Mercatus relationship

with ENH; by the Hospital's interference with Mercatus attempts to build a physician center in Barrington; and by damaging Mercatus's ability to procure funding.

115. Mercatus has been injured by the governmental process to which Lake Forest Hospital subjected it before the Village of Lake Bluff. These activities described above undermined the government decision-making process and robbed it of its legitimacy.

116. Additionally, Mercatus was injured by these activities notwithstanding the Lake Bluff Board's vote to deny its site plan approval on January 22, 2007. Lake Forest Hospital intended to injure Mercatus via these activities and not solely by the January 2007 vote.

117. The sham proceedings and the campaign of disparagement undertaken by Lake Forest Hospital, the Village of Lake Bluff, and the other defendants were not valid government action. The proceeding that purported to require a "special use" vote was baseless. Rather, these actions were intended to interfere with the activities of the Hospital's competitor, Mercatus and to harass Mercatus.

118. Mercatus was injured by the false statements made by Lake Forest Hospital to the Village of Lake Bluff Board of Trustees about the purported impact of the Mercatus Center. (The Village only had the authority to review the site plan approval for certain considerations as enumerated by statute.) Mercatus was injured by the false statements made by Lake Forest Hospital outside the Village Board through the Hospital's campaign of disparagement, including, but not limited to, the Hospital's statements to physicians.

119. The conspiracy and the conduct described in this complaint, supra, impacted competition. The conspiracy and the conduct described in the complaint impacted interstate commerce.

120. Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

**COUNT III**
**(42 U.S.C. 1983 -- Substantive Due Process Violation Directed at Defendants Village of Lake Bluff, Peters, Barkhausen, and Lesser)**

121. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-121 as if set forth fully in this Count III.

122. Defendants Village of Lake Bluff, and all the individual Defendants acted under color of state law.

123. Mercatus had a property interest in the approval of its site plan to build the Mercatus Center. Mercatus had prepared an adequate site plan that the Lake Bluff Architectural Board of Review approved. The site for the Mercatus Center met all zoning requirements as it was zoned L-2. Under the zoning regulations in Lake Bluff, L-2 zoning permitted a medical office use such as the Mercatus Center.

124. Further, the Village advised Mercatus that the Mercatus Center would be approved if Mercatus followed the Village's procedure.

125. However, the Village did not approve the site plan and failed to do so in accordance with Lake Bluff ordinances, including 10-1-9(E).

126. Defendants' actions were arbitrary, unreasonable and irrational as bearing no substantial relationship to the public health, safety, or welfare. Mercatus planned to build a medical office building in the Village of Lake Bluff which would increase competition in the area for diagnostic imaging services and increase access to health care services. Defendants' decision to deny Mercatus the ability to construct the Mercatus Center and to recruit physician tenants was arbitrary and not in the public interest. The decision to deny site plan approval was

not related to any listed criteria in Lake Bluff law, was ultra vires, and, based on comments by defendants and Village representatives, was made to stifle competition in favor of Lake Forest Hospital.

127. Further, as explained above, the Village Board approved a "special use" that allowed the proposed development on the Shepard Land in October 2006. At that meeting, the Board would likely have approved the site plan for the Mercatus Center. However, after that meeting, Defendant Lake Forest Hospital and others (including Defendant Peters) began a campaign to discredit Mercatus. Therefore, just a few months after the Village Board was prepared to approve the site plan, the Village Board voted to deny the site plan. Such actions were the result of the animus of the Defendants rather than motivated by any legitimate governmental purpose.

128. The actions of the Defendants were arbitrary, unreasonable and irrational. Defendants refused to approve Mercatus's site plan at either the October 2006 or the January 2007 Board meetings, despite Mercatus having met all relevant requirements for the approval, and despite the Village Board's one-time approval of Mercatus so-called special use. Defendants' actions were further arbitrary and irrational as they were driven by personal animus against Mercatus.

129. Further, by even reviewing Mercatus's site plan in the context of the pre-existing Shepard SUP, Defendants' actions were arbitrary, irrational and biased against Mercatus. The Village Board was not required to examine the Shepard SUP that had been granted to the current occupant of the Shepard Land, as no such special use was required for the proposed Mercatus Center. By subjecting Mercatus to a sham hearing to discuss the so-called special use, Defendants subjected Mercatus to arbitrary and irrational conduct.

130. Defendants denied Mercatus due process by holding secret meetings in violation of the Illinois Open Meetings Act. On information and belief, the secret meetings, conducted by Defendants Peters, Barkhausen, and Lesser, unfairly set the agenda outside an open process. For example, Trustee Barkhausen posted on his website that it was "certain" that the Mercatus Center would not be approved--a month before that vote was even cast.

131. Mercatus' right to substantive due process has been violated by the actions of defendants.

132. The acts and omissions of the Defendants caused Mercatus irreparable harm.

133. The Resolution passed by the Board of Trustees that issued on February 12, 2007 was a final decision. Mercatus has no adequate state law remedy for these due process violations.

134. Mercatus seeks an award of its reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**(42 U.S.C. 1983 -- Procedural Due Process Violation Directed at Defendants Village of Lake Bluff, Peters, Barkhausen, and Lesser)**

135. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-135 as if set forth fully in this Count IV.

136. Defendants Lake Bluff Village Board of Trustees, Village of Lake Bluff, and the Individual Defendants acted under color of state law.

137. Mercatus had a property interest in the approval of its site plan to build the Mercatus Center. Mercatus prepared an adequate site plan that was approved by the Lake Bluff Architectural Board of Review. The site for the Center met all zoning requirements as it was

zoned L-2. Under the zoning regulations in Lake Bluff, L-2 zoning permitted a medical office use such as the Mercatus Center.

138. Further, the Village advised Mercatus that the Mercatus Center would be approved if Mercatus followed the Village's procedure.

139. The actions of the Defendants were arbitrary, unreasonable and irrational. Defendants refused to approve the Mercatus site plan at the January 2007 meeting of the Board, despite Mercatus having met all relevant requirements for the approval. The denial of approval was not based on any legitimate government purpose but rather on defendants desire to stifle competition in favor of Lake Forest Hospital. The decisions of the Defendants were driven by personal animus against Mercatus, and bore no substantial relationship to the public health, safety, or welfare.

140. As described above, the Village Board could only disapprove the Mercatus site plan based on specific criteria enumerated in Lake Bluff Ordinance 10-1-9(E), namely: (1) the site plan application is materially incomplete; (2) the proposed site plan fails to meet applicable zoning standards; (3) the proposed site plan is detrimental to the use and enjoyment of the surrounding property; (4) the proposed site plan creates undue traffic congestion or safety hazards; (5) the site plan landscaping does not provide adequate shielding from or for nearby uses; (6) the proposed site plan creates unreasonable drainage or erosion problems; (7) the proposed site plan places unwarranted burdens on utility systems; and (8) restrictions related to the Central Business District [not applicable to the Mercatus site plan].

141. However, the defendants denied site plan approval based on the potential impact of the Mercatus Center on the business of Lake Forest Hospital. Comments of the

defendants and other Village representatives, reflected above, indicate the basis for their decision. Such a vote is not permitted under Lake Bluff law.

142. Mercatus has further been denied due process because of the sham hearings forced upon it by defendants in October 2006 and January 2007. Defendants improperly subjected Mercatus to a hearing and a vote as to whether a "special use" was required to permit Mercatus to construct the Mercatus Center. However, as the Defendants knew, the proposed Mercatus Center site had been zoned L-2 at all relevant times. Only the portion of the Shepard Land used for automotive sales required a special use permit; no such special use permit was required for use of the remainder of the Shepard Land by the Mercatus Center.

143. Defendants subjected Mercatus to arbitrary and irrational conduct by subjecting Mercatus to a sham hearing in its discussion and decision-making regarding the "special use." Defendants orchestrated votes, through meetings in violation of the Illinois Open Meetings Act, to achieve this end. On information and belief, these meetings were conducted by defendants Peters, Barkhausen, and Lesser. Defendants did not allow Mercatus to receive a vote on site plan approval at the October 23 meeting, instead that vote was tabled to the next meeting. As a result of these previous secret meetings, at the November 13 meeting, defendants orchestrated a motion to re-consider the special use vote. Before the January 2007 meeting, Trustee Barkhausen posted on his website that it was "certain" that the Mercatus Center would not be approved--before that vote was even cast.

144. Further, the sham hearings described in this complaint affected the eventual approval of the Mercatus site plan. The improper debate as to "special use" prolonged the proceedings for Mercatus site plan approval, enabling several trustees to change their votes. These hearings also confused the proceedings.

145. Mercatus was not provided adequate opportunity to be heard before the Resolution issued. Rather, defendants held numerous closed-door meetings that shut out the public as well as Mercatus from the Village Board's decision-making. The Village Board was required to hold open meetings.

146. Additionally, Mercatus was not provided an adequate opportunity to speak at the November 13, 2006 hearing. At this meeting, as a result of anti-competitive pressure from Lake Forest Hospital, the Village Board voted to reconsider its prior approval of the so-called special use of the Shepard Land. Despite its attempts to be heard at this meeting, Mercatus was not allowed to speak on its own behalf.

147. The Resolution passed by the Board of Trustees that issued on February 12, 2007 was a final decision. Mercatus has no adequate state law remedy for these due process violations.

148. Mercatus seeks an award of its reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT V**
**(State Law – Ultra Vires Action**
**Directed at Defendants Village of Lake Bluff, Peters, Barkhausen, and Lesser)**

149. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-149 as if set forth fully in this Count V.

150. As described above, the Village Board was only required to vote on the site plan presented by Mercatus for the Mercatus Center. This site plan was approved by the Lake Bluff Architectural Board of Review in September 2006.

151. Under the Lake Bluff ordinances, the Village and the named defendants had no discretion to deny the Mercatus site plan based on anything related to Lake Forest

Hospital, and rather it could only be disapproved based on written findings directed to one or more of the following areas: (1) the site plan application is materially incomplete; (2) the proposed site plan fails to meet applicable zoning standards; (3) the proposed site plan is detrimental to the use and enjoyment of the surrounding property; (4) the proposed site plan creates undue traffic congestion or safety hazards; (5) the site plan landscaping does not provide adequate shielding from or for nearby uses; (6) the proposed site plan creates unreasonable drainage or erosion problems; (7) the proposed site plan places unwarranted burdens on utility systems; and (8) restrictions related to the Central Business District [not applicable to the Mercatus site plan].

152. However, in denying the Mercatus site plan, the Village Board and the named defendants did not base their decision on written findings directed to any of the above enumerated criteria. Rather, the Village and the named defendants based the decision on the potential harm to Lake Forest Hospital and to stifle competition in the favor of the Hospital.

153. Specifically, the named defendants Peters, Barkhausen and Lesser stated at various times that they voted against Mercatus because the Mercatus Center may harm Lake Forest Hospital.

154. Further, in contravention of existing Lake Bluff law, the Village Board and the named defendants subjected Mercatus to a sham proceeding. As described above, Mercatus only needed site plan approval to build the Mercatus Center. The Shepard Land was zoned L-2 and therefore did not require the Board to grant a "special use" permit to allow the construction of a medical office building.

155. Despite the fact that it was not required, the Board still subjected Mercatus to a vote at the October 23, 2006 meeting as to whether special use would be granted. It was outside of the Board's authority to require such a vote.

156. The Board and the named defendants intentionally misrepresented the Shepard SUP and existing Lake Bluff law to require this vote. This sham caused the vote on the site plan to be delayed to the November 2006 Board meeting.

157. Mercatus has been injured by the ultra vires acts by defendants and the Village of Lake Bluff. Mercatus was injured by these activities notwithstanding the Lake Bluff Board vote to deny its site plan approval on January 22, 2007.

158. Mercatus was injured by the ultra vires acts of defendants through interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates and other physicians; through interference with the Mercatus relationship with ENH; and by damage to Mercatus's ability to procure funding.

**COUNT VI**
**(42 U.S.C. 1983 – Equal Protection Violation**
**Directed at Defendants Village of Lake Bluff, Peters, Barkhausen, and Lesser)**

159. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-159 as if set forth fully in this Count VI.

160. In the proceedings before the Village Board described above, Mercatus was intentionally treated differently by the Village and the named defendants, than other identically-situated parties.

161. Mercatus was intentionally treated differently by the Village of Lake Bluff and the named defendants because the proposed Mercatus Center would compete with Lake Forest Hospital.

162. Mercatus had its "special use" approval as of October 23, 2006. However, in an unusual, unprecedented and arbitrary maneuver, the Village Board voted to "re-consider" the special use vote at the Board's next meeting. On information and belief, defendants Peters, Barkhausen, and Lesser orchestrated this re-consideration by meeting, in secret and not in public session, beforehand. At this secret meeting, the named individual defendants decided that Trustee Shineflug would make a motion, during the open meeting, to re-consider the special use vote. These actions to re-consider the special use were arbitrary and irrational.

163. Mercatus was treated differently than others because of the Defendants' personal animus towards Mercatus, evidenced by the re-consideration. This animus was based on Defendantss' views that Mercatus posed a competitive threat to Lake Forest Hospital. This personal animus did not bear a relationship to any legitimate government purpose, and instead detracted from the public good because it denied the citizens of Lake Bluff access to health care and competitive prices for those health care services.

164. Additionally, defendants acted in an arbitrary and irrational manner and treated Mercatus differently than others by denying Mercatus Center site plan without reference to state law. Further, defendants acted in an arbitrary and irrational manner and treated Mercatus differently than others by holding a sham proceeding to determine whether Mercatus needed a "special use" permit to build on the Shepard Land--that land was already authorized for a medical office building use.

165. Defendants' personal animus caused the denial of the Mercatus Center site plan and damage to Mercatus. Further, these defendants caused damage to Mercatus by interfering with their ability to engage in partnerships with local physicians.

## COUNT VII
**(Tortious Interference with Prospective Economic Advantage Directed at Lake Forest Hospital)**

166. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-166 as if set forth fully herein this Count VII.

167. Mercatus had a reasonable expectation of entering into valid business relationships in connection with its site plan for the Mercatus Center. Specifically, Mercatus entered into letter agreements with two local, well-known group medical practices, North Suburban Medical Associates and Lake Forest Medical Associates. Both practices sent diagnostic imaging to Lake Forest Hospital. These two medical practices would open offices in the proposed Mercatus Center, and begin obtaining their diagnostic imaging from the Mercatus Center, and would no longer send diagnostic imaging to Lake Forest Hospital.

168. Defendant Lake Forest Hospital knew of the Mercatus expectancy of valid business relationships and, specifically, knew that Mercatus had contracted with these two medical practices.

169. Defendants intentionally and unjustifiably interfered with these prospective business relationships and prevented them from ripening into valid relationships.

170. Lake Forest Hospital met with the North Suburban Group in September 2006. North Suburban and its attorney informed Lake Forest Hospital that North Suburban was under contract with Mercatus for the Mercatus Center. However, Lake Forest Hospital continued to pressure North Suburban to disengage from the Mercatus agreement. All doctors in the North Suburban Group held privileges at Lake Forest Hospital, so this pressure carried substantial weight.

171. After the September meeting, North Suburban requested that it be released from the "no shop" provision in the Mercatus letter agreement. At that point, the doctors were no longer committed to the Mercatus Center.

172. In addition, Lake Forest Hospital met with Dr. Gary Schaffel of Lake Forest Medical Associates to discuss his medical group's letter agreement with Mercatus, in an attempt to pressure Dr. Schaffel to end his relationship with Mercatus. Dr. Schaffel and the other doctors in his group also had privileges at Lake Forest Hospital.

173. Additionally, on information and belief, Lake Forest Hospital spoke to numerous other physicians about participating in the Mercatus Center. Defendant Lake Forest Hospital began a negative, untrue publicity campaign against Mercatus and the Mercatus Center that had the effect of interfering with the business relationships.

174. In addition, all defendants forced the sham hearing in connection with the Shepard SUP, even though there was no requirement that the Mercatus Center obtain such special use permission.

175. Mercatus was damaged by the Defendants' intentional and unlawful interference.

**COUNT VIII**
**(Tortious Interference with Prospective Economic Advantage Directed at Lake Forest Hospital)**

176. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-176 as if set forth fully in this Count VIII.

177. As of mid-2006, Mercatus had a pre-existing relationship with Evanston Northwestern Healthcare ("ENH") and to develop additional physician centers with ENH. Mercatus and ENH were already partners in the Mercatus Vernon Hills physician center. In

addition, ENH and Mercatus intended to partner for healthcare services related to the Mercatus Center. Further, ENH and Mercatus intended to form a business relationship in connection with at least three other physician centers.

178. Mercatus had a reasonable expectation of entering into a new, valid business relationship with ENH in connection with its site plan for the Mercatus Center and for further centers.

179. Defendants knew that Mercatus had this expectancy with ENH.

180. Defendants intentionally and unjustifiably interfered with this prospective business relationship and prevented it from ripening into a valid relationship. Defendant's anti-competitive actions described above caused the relationship to deteriorate and end.

181. Additionally, Defendant Lake Forest Hospital began a negative, untrue publicity campaign against Mercatus and the Mercatus Center that had the effect of interfering with the business relationship with ENH.

182. In addition, Lake Forest Hospital forced the sham hearing in connection with the Shepard Special Uses, even though there was no requirement that the Mercatus Center obtain such special use permission. This unjustified interference also prevented these prospective business relationships from becoming valid business relationships.

183. Mercatus was damaged by the Hospital's intentional and unlawful interference.

**COUNT IX**
**(Vested Rights -- Directed at Village of Lake Bluff)**

184. Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-184 as if set forth fully in this Count IX.

185. Mercatus had a vested right in site plan approval for the Mercatus Center. Mercatus spent significant amounts of money and incurred obligations in reasonable reliance on the site plan approval for the Mercatus Center.

186. Further, the Village advised Mercatus that the Mercatus Center would be approved if Mercatus followed the Village's procedure.

187. The proposed site for the physician center was zoned L-2 and therefore medical office use was permitted as a matter of right. Mercatus was legally entitled to rely on the zoning of the property at issue. Based on the existing zoning, there was a probability that site plan approval would issue. Based on this probability, Mercatus invested substantial resources into the Mercatus Center and substantially changed its position in reasonable reliance on the existing zoning.

188. As an additional ground, even though not required by Lake Bluff laws and ordinances, the Village Board voted to approve a "special use" of the Shepard Land in October 2006. Therefore, at this time, there was a probability of site plan approval. And based on the special use approval, Mercatus incurred substantial additional costs, after October 23, 2006, and changed its position and was further damaged in reasonable reliance on the Board's actions.

189. Mercatus was injured by Defendants' interference with these vested rights.

**WHEREFORE**, Mercatus prays for the entry of judgment:

(1) An award of damages jointly and severally against Lake Forest Hospital, Village of Lake Bluff, and the Individual Defendants in an amount to be determined at trial;

(2) An award of damages against defendants in an amount to be determined at trial;

(3) A judgment that Mercatus is entitled to build the Lake Bluff Physician Center on the Shepard Land, without respect to any special use and that the Village Board approve the proposed site plan;

(4) Awarding attorney's fees, expenses and costs pursuant to 42 U.S.C. § 1988(b);

(5) Awarding attorney's fees, expenses, costs and prejudgment interest pursuant to 15 U.S.C. § 15; and

(6) Providing such other and further relief as the Court deems just.

**JURY DEMAND**

Mercatus demands a jury on all issues triable at law.

Date: April 12, 2007

RESPECTFULLY SUBMITTED

WINSTON & STRAWN LLP

W. Gordon Dobie
Brian D. Werner
35 West Wacker Drive
Chicago, IL 60601
Attorneys for Mercatus, L.L.C.