## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

MERCATUS GROUP LLC,

        Plaintiff,

   v.

LAKE FOREST HOSPITAL,

        Defendant.

Case No.  07 CV 2042

Judge Blanche M. Manning

Magistrate Judge Martin C. Ashman

## AMENDED COMPLAINT

Plaintiff Mercatus Group LLC ("Mercatus"), by its attorneys, Winston & Strawn LLP, alleges:

### NATURE OF ACTION

1.      This is a case about Lake Forest Hospital's attempt to monopolize the diagnostic imaging market and the comprehensive physician services market in eastern Lake County, Illinois and to exclude unlawfully Lake Forest Hospital's competitor, Mercatus.

2.      Lake Forest Hospital sought to obtain monopoly power through anti-competitive activity, and among other things, abused the Village Board of Lake Bluff zoning process through sham proceedings with the intent to injure its competitor Mercatus.  Further, Lake Forest Hospital conducted a campaign of disparagement, in public and private, against Mercatus.  Finally, Lake Forest Hospital unlawfully attempted to maintain control over the market to offer comprehensive physician services by using unfair and unlawful tactics to pressure physicians not to deal with the Hospital's competitors, including Mercatus.

3.    Although the defendant is a non-profit institution it has substantial assets (in excess of $100 million) and acted aggressively to attempt to exclude competitors.  To this end, Lake Forest Hospital made several misrepresentations, both to public and private parties, and overstated the impact of the competition in order to create unfounded fears that regular, lawful competition from Mercatus would negatively affect Lake Forest Hospital and the community.  Lake Forest Hospital's activities described below injured plaintiff Mercatus Group LLC ("Mercatus") and consumers resulting in reduced services and higher prices.

4.    The plaintiff Mercatus sought to compete with Lake Forest Hospital. Mercatus develops and runs "physician centers" that compete with hospitals like Lake Forest Hospital in the delivery of diagnostic imaging services.  In 2004, Mercatus began plans to build a "physician center" in Lake Bluff, Illinois (the "Mercatus Center") approximately three miles away from Lake Forest Hospital.  The Mercatus Center would drive down health care prices, specifically the prices paid by consumers for diagnostic imaging services, and increase access to health care.

5.    The Mercatus Center would have provided comprehensive physician services to physician groups that chose to practice at the Center.  These "physician services" include business, clinical, and real estate services provided to physicians in a single location. Business services include billing assistance for physicians, clinical services include on-site diagnostic imaging services, and real estate services include leasing space to physicians.  Lake Forest Hospital also offers comprehensive physician services.

6.    In late 2006, the Mercatus Center's "site plan" for the construction of a medical office building at the corner of Route 176 and Route 41 in the Village of Lake Bluff was approved by the Village of Lake Bluff Architectural Review Board and needed only final

approval from the Village, which is typically a formality. Prior to final approval, Lake Forest Hospital intervened through anti-competitive means to thwart competition. First, Lake Forest Hospital misrepresented information to both the public and to private parties regarding Mercatus, the proposed physician center, and the economic impact to Lake Forest Hospital. Further, Lake Forest Hospital forced a series of sham and unnecessary hearings--hearings that ran afoul of relevant law and procedures--that were designed to prevent the Mercatus Center from competing with Lake Forest Hospital. Although Mercatus was entitled to build a physician center according to relevant Lake Bluff ordinances, the Village eventually required Mercatus to obtain permission from the Village Board based on a pre-existing special use permit. This permission was not a legislative process creating a new special use permit, but rather an adjudicative process determining whether the existing permit applied to the Mercatus project. Finally, Lake Forest Hospital interfered with Mercatus's existing business relationships by intimidating physicians that had agreed to work at the proposed center and causing those physicians to back out of their commitments to Mercatus and the proposed center. As a result of these anticompetitive actions, Mercatus was substantially damaged.

## **PARTIES**

7.      Plaintiff Mercatus is a Delaware limited liability company with its principal place of business in Vernon Hills, Illinois. Mercatus competes with hospitals, like Defendant Lake Forest Hospital, by aggregating at a single office location independent physician practices into "physician centers." At these physician centers Mercatus offers comprehensive physician services to physician practices, including business services, clinical services, and real estate services. Mercatus delivers outpatient services to patients such as diagnostic imaging

services like nuclear imaging, magnetic resonance imaging ("MRI"), and computed tomography scans ("CT scans").

8.    Defendant Lake Forest Hospital (the "Hospital") is an Illinois corporation with its principal place of business in Lake Forest, Illinois.  Lake Forest Hospital provides comprehensive physician services and diagnostic imaging services (including nuclear imaging, MRI's, and CT scans).

## JURISDICTION AND VENUE

9.    This Court has jurisdiction pursuant to 15 U.S.C. §§ 1, 2 and 15; and 28 U.S.C. §§ 1331 and 1367, as well as the United States Constitution.  The conduct described in this complaint impacted interstate commerce.

10.    Venue lies in this District under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND FACTS

### Mercatus plans to open the Mercatus Physician Center

11.    Mercatus is in the business of developing and running "physician centers." A physician center is a medical office building that includes comprehensive medical services and on-site business services for physicians.  Physician centers enable small medical practices to increase revenue, reduce costs for patients and insurers, and provide comprehensive care.  Some of the services provided by physician centers include the ability to deliver diagnostic imaging services, such as nuclear imaging, CT scans, and/or MRI, on-site.  Although physicians approve of the physician center business model, some hospitals, like Lake Forest Hospital, do not like it because it competes with their outpatient services like diagnostic imaging.

12. Mercatus physician centers offer very competitive prices for services like on-site diagnostic imaging. Lake Forest Hospital also provides on-site diagnostic imaging services, but Lake Forest Hospital charges significantly higher rates than can be charged by Mercatus. Lake Forest Hospital has attempted to maintain control of the diagnostic imaging services market and comprehensive physician services market in eastern Lake County.

13. In March 2004, Mercatus began plans to open a physician center in Lake Bluff, Illinois (the "Mercatus Center") and in Vernon Hills. Mercatus opened the Vernon Hills center in October 2005. The Mercatus Center (in Lake Bluff) would be located on suitable land in Lake Bluff and was targeted to open in June 2007.

14. From March 2004 through April 2006, Mercatus met with physicians in the areas of Lake Bluff and Lake Forest to discuss practicing in the Mercatus Center. By April 2006, Mercatus had signed Group Practice Letter Agreements with two large internal medicine practices: North Suburban Medical Associates, located in Lake Bluff and Lake Forest Medical Associates, located in Lake Forest at the Lake Forest Hospital's Westmoreland campus. By these letter agreements, the medical practices committed to working at the Mercatus Center.

15. Mercatus also communicated with local hospitals to attempt to partner with these hospitals to deliver health care efficiencies. In fact Mercatus met with Lake Forest Hospital executives on five separate occasions to discuss partnering at the Mercatus Center.

16. Also, by early 2006, Mercatus had a pre-existing relationship with local hospital and healthcare network Evanston Northwestern Healthcare ("ENH"). ENH and Mercatus were partners in Mercatus' Vernon Hills Physician Center and had planned to partner in the construction of four additional physician centers, including the one in Lake Bluff.

**Mercatus contracts for the Shepard Chevrolet Land**

17.     In connection with its plan to open the Mercatus Center, Mercatus sought appropriately zoned real estate in Lake Bluff.  Mercatus sought real estate that was approved for medical office building use and that had a favorable, convenient location for the future patients of the Mercatus Center.

18.     Mercatus identified land controlled by George Shepard, located at the southwest corner of U.S. Route 41 and Route 176 (the "Shepard Land").  The Shepard Land already featured an automotive sales dealership on part of the land called Shepard Chevrolet.  Mercatus intended to use another portion of the Shepard Land for its business.  Mercatus signed a letter of intent to lease a portion of this land in December 2005.

19.     The Shepard Land was zoned for the medical office use contemplated here.  The Shepard Land is zoned "L-2" under Lake Bluff zoning ordinances.  According to these ordinances, any use that is permissible in the "Office and Research District" is also permissible in the L-2 zone zoning district.  The portion of the Lake Bluff ordinances relating to the Office and Research District permits "Offices," which includes "Offices and Clinics of Medical Doctors."

### Mercatus approaches the Lake Bluff Village Board of Trustees

20.     After entering into a contract for the lease of part of the Shepard Land and contacting several doctors about their interest in the proposed Mercatus Center, Mercatus approached the Village of Lake Bluff to investigate what, if any, steps needed to be taken to gain approval for the Mercatus Center.

21.     In March 2006, Mercatus attempted to meet with each of the Trustees to discuss its plans to build the Mercatus Center.  Mercatus conducted meetings with several

Village trustees. Trustee Peters, who works as a medical doctor at Lake Forest Hospital, refused to meet with Mercatus despite repeated requests for such a meeting.

22.     At this time, the Village President and a number of Trustees were enthusiastic supporters of the Mercatus Center in Lake Bluff. Beginning in March, the Village President had numerous conversations with Mercatus to guide Mercatus through the Lake Bluff Village approval. The Village President, Christine Letchinger, purportedly was a strong supporter of the Mercatus Center.

23.     Mercatus presented plans for the Mercatus Center at the April 10, 2006 Board of Trustees meeting. Mercatus answered questions from the Trustees and interested parties about the design of the site and related traffic issues.

24.     However, representatives of Lake Forest Hospital also attended the April 2006 meeting and made numerous misrepresentations. At this meeting, representatives of the Hospital stated that the Mercatus Center would extract profitable services from Lake Forest Hospital and would jeopardize the Hospital's charitable services, which were represented by the Hospital as $25 million in charitable services each year. Lake Forest Hospital further stated at this meeting that a vote by the Board in favor of the Mercatus Center would be a vote against Lake Forest Hospital.

25.     Even though Mercatus approached Lake Forest Hospital numerous times, Lake Forest Hospital refused all requests by Mercatus to partner with the Lake Bluff Mercatus Center for the delivery of health care services. However, Lake Forest Hospital expressed its willingness to partner with Mercatus in other geographic areas outside of Lake Bluff and/or Lake Forest. Moreover, Lake Forest Hospital has acted to exclude other competitors, including ENH, from the eastern Lake County market.

26.     At the April 2006 meeting, the question of whether the Mercatus Center would need a "special use" permit was never raised.

27.     According to the relevant Lake Bluff ordinances, Mercatus needed only "site plan approval" from the Village of Lake Bluff to construct a building in the L-2 zone.  The Mercatus Center site plan was first to be presented to the Village's Architectural Board of Review.  The Architectural Board of Review would then make a recommendation for approval to the Village Board of Trustees.

### Mercatus is informed that it needs "special use" permission

28.     After the April meeting, Mercatus continued to meet with Village trustees to discuss concerns related to specific aspects of the site plan.  Numerous trustees expressed their support for the Mercatus Center as a low-cost, high-quality alternative to Lake Forest Hospital.

29.     However, Village Trustee Rick Lesser told Mercatus that he would not support the Mercatus Physician Center in Lake Bluff because of the potential to harm Lake Forest Hospital.  Trustee Lesser told Mercatus that, in his view, even a nominal reduction in revenue to the Hospital caused him to not support that Mercatus plan.

30.     In approximately June 2006, after Lake Forest Hospital objected to the Mercatus Center, the Village asserted that site plan approval for the Mercatus Center was contingent on special use permission.  This "special use" permission was only raised as a requirement after Lake Forest Hospital raised its alleged concerns about Mercatus as competition.

31.     The Shepard Land was zoned L-2.  The Shepard Land was governed by a Special Use Permit (the "Shepard SUP") dated 1972 (and amended in 1976 and 1979) that was granted to allow a partition of the Shepard Land to be used for automotive sales, contrary to that

land's zoning. However, as the Shepard Land is zoned L-2, so Mercatus did not need "special use" permission from the Village to construct a medical office building.

32.     Mercatus continued to pursue site plan approval. Before the Board of Trustees reviews a site plan, the site plan is reviewed by the Lake Bluff Architectural Board of Review. The Architectural Board of Review is specifically designated by Lake Bluff to advise the Village about commercial design and development matters. Mercatus presented its site plan to the Board of Review in September 2006. The Board of Review unanimously approved the Mercatus Center site plan.

33.     Mercatus next sought to obtain Village Board of Trustees approval of the Mercatus Center site plan. After the Board of Review approves a site plan and so recommends to the Board of Trustees, a two-thirds vote of the Board of Trustees is required to reject the site plan. Further, according to Lake Bluff ordinances, 10-1-9(E)(1) - (8), the Village Board can only disapprove a site plan on the basis of "written findings" directed to the following standards: (1) the site plan application is materially incomplete; (2) the proposed site plan fails to meet applicable zoning standards; (3) the proposed site plan is detrimental to the use and enjoyment of the surrounding property; (4) the proposed site plan creates undue traffic congestion or safety hazards; (5) the site plan landscaping does not provide adequate shielding from or for nearby uses; (6) the proposed site plan creates unreasonable drainage or erosion problems; (7) the proposed site plan places unwarranted burdens on utility systems; and (8) restrictions related to the Central Business District [not applicable to the Mercatus site plan]. Based on the approval of the Architectural Board of Review and the limited considerations of the Village Board, the site plan approval should have been virtually automatic.

**Mercatus is subjected to sham proceedings before Lake Bluff Board**

34.     In connection with both site plan approval and with the sham "special use" approval, Mercatus was a victim of a deliberate, anti-competitive and illegal campaign by Lake Forest Hospital and other various co-conspirators to restrain the Mercatus business.   In connection with the Mercatus Center, Lake Forest Hospital made a series of public and private misrepresentations about the Mercatus Center, acted in an anti-competitive manner, and engineered a sham and needless "special use" vote--all in order to obtain monopoly power and kill nascent competition from the fledgling Mercatus Center.

35.     Lake Forest Hospital misrepresented several facts in public sessions and, on information and belief, outside of Board meetings, to the Village Board, including that the Mercatus Center would cause a $2 million loss to Lake Forest Hospital, drive the Hospital out of business, and prevent it from providing charity care.   All these statements were demonstrably false and/or made with reckless disregard for their veracity.   These actions injured Mercatus in the sham proceeding described below and outside of the Board hearings.   Lake  Forest  Hospital also made false statements outside of the political forum, including, on information and belief, that Walgreens wanted to purchase the Shepard Land for retail use.   However, no such offer or communication was ever made by Walgreens.

36.     As described further below, Lake Forest Hospital, subjected Mercatus to a sham proceeding by orchestrating a separate vote on a so-called "special use" of the Shepard Land.   Defendant knew or reasonably should have known that Mercatus was not required to have the Village Board approve Mercatus's use for the Shepard Land and that Mercatus only needed site plan approval to build on the Shepard Land.   These hearings prolonged and confused the proceedings for Mercatus site plan approval (which cost Mercatus hundreds of thousands of dollars).

37.     Lake Forest Hospital engaged in further anti-competitive conduct to injure Mercatus.  In September 2006, the Hospital met with North Suburban Medical Associates and Lake Forest Medical Associates, the two physician practice groups who had signed agreements to practice at the Mercatus Center.  Lake Forest Hospital pressured those groups to alter the terms of their agreements with Mercatus.  Lake Forest Hospital had substantial influence over the doctors' decisions because the doctors held valuable staff privileges at the Hospital.

38.     On information and belief, Lake Forest Hospital representatives made threatening telephone calls to other physicians that were considering practicing at the Mercatus Center.  These phone calls prevented the physicians from advocating the Mercatus plan in public forums like the Village Board meetings.

39.     On information and belief, Lake Forest Hospital's representatives offered to purchase the Shepard Land in an attempt to dissuade Shepard from proceeding with the Mercatus contract.  This offer of purchase was made to derail the Mercatus business plan.

40.     Even now, Lake Forest Hospital has continued its anti-competitive actions because of the perceived threat that the Mercatus lower-cost model presents to Lake Forest Hospital's business.  In early 2007, a Lake Forest Hospital employee called another hospital, Advocate Good Shepherd Hospital in Barrington, Illinois, to boast of its actions in Lake Bluff. The Hospital employee called to warn Advocate Good Shepherd about Mercatus, as Mercatus had recently begun plans to build a physician center in Barrington.  The Hospital employee advised Advocate Good Shepherd not to work with Mercatus.  The Hospital's representatives have contacted a number of other health care entities in the Chicago metropolitan area regarding Mercatus, as well.

41.     Lake Forest Hospital has actively sought to exclude competitors from the diagnostic imaging services and comprehensive physician services markets in eastern Lake County.

**Mercatus Center does not receive a vote on the site plan**

42.     The Mercatus Center site plan was to be voted on at the October 23, 2006 meeting of the Village Board.   Before this meeting, Village President Letchinger assured Mercatus that there were enough votes to secure passage of the Mercatus Center site plan. However, Defendant conspired before, during and after the meeting to deprive Mercatus of due process and adversely impact the fairness of the proceeding.

43.     At the October 23 meeting, rather than voting on the site plan--which is all that was required of the Board according to the laws of Lake Bluff--the Board of Trustees voted to separate the issues of "special use" permission and the site plan.

44.     The question of whether the Mercatus Center would be subject to the Shepard SUP (and therefore require a new special use permission) was never raised at the April 10 meeting, when Mercatus was before the Village Board.   Instead, only after Lake Forest Hospital began its campaign to block Mercatus did the Village mandate that Mercatus obtain "special use" approval.

45.     It was outside of the Board's authority to require a vote on the special use. The Village's proffered reason for this vote was the pre-existing Shepard SUP, however the Village incorrectly represented the Shepard SUP to require that any other use of the Shepard Land be approved.   There was no need for special use permission because Mercatus intended to use the Shepard Land as a permitted use under the current L-2 zoning of the Shepard Land. Therefore, under Lake Bluff law, the Board only had to right to vote on the Mercatus site plan

and could only reject that site plan for the reasons enumerated in Lake Bluff ordinances 10-1-9(E)(1) - (8).

46.     However, rather than proceed to a site plan vote, the Village, with the urging and assistance of Lake Forest Hospital, defined a separate agenda and forced a vote as to whether the project should be approved as a "special use."  This had the impact of re-writing the zoning code without due process to Mercatus.

47.     Trustee Doctor Michael Peters commented extensively at the meeting that the Board was authorized to review Mercatus for "special use" permission despite his conflict of interest as a doctor at Lake Forest Hospital, a competitor of Mercatus.  In so doing, Peters ensured that Mercatus would be subjected to this sham proceeding.

48.     After the Board approved this two-vote procedure, representatives of Mercatus presented facts and data concerning the economic benefits of the Mercatus Center, the traffic issues related to the Mercatus Center, and the environmental impact of the construction of the Mercatus Center.

49.     Mercatus presented the Board with detailed information on the potential economic impact of the Mercatus Center.  However, Lake Forest Hospital did not respond to these economic arguments and only asserted that competition would harm the Hospital, further indicating the Hospital's anti-competitive intent.

50.     The CEO of Lake Forest Hospital, Tom McAfee, spoke on behalf of the Hospital and urged the Board to vote against Mercatus so as to further the Hospital's own interests.  McAfee's comments did not present the Board with any relevant, rational grounds related to the proposed site plan, or even to a potential special use permit, but instead were based

on Mercatus' purported impact on Lake Forest Hospital's business--not a ground set forth under applicable law.

51.　　McAfee stated that approval of the Mercatus Center would cause the Hospital to lose $2,000,000 and that "$2,000,000 is a lot of nurses." In a written letter to the Village President McAfee had stated that the Mercatus Center would cause a loss of $2.3 million to the Hospital in lost imaging business.

52.　　According to McAfee, the Hospital provided extensive charity care and extensive care to patients who cannot pay medical bills.

53.　　Trustee Peters, still refusing to recognize his conflict of interest, stated that Mercatus and Lake Forest Hospital were not on a level playing field from the standpoint of competition.

54.　　Despite these objections at the October meeting, Mercatus received approval to develop and/or use the Shepard Land (in connection with the Shepard SUP) by a vote of 4-3.

55.　　Trustee David Barkhausen voted against the Mercatus Center because of its perceived impact on Lake Forest Hospital. Barkhausen was "moved by testimony of Lake Forest Hospital employees."

56.　　Trustee Peters voted on this issue, against Mercatus, despite his conflict of interest described above.

57.　　Trustee Lesser voted against Mercatus at the October 23, 2006 meeting purportedly because of the competitive impact of Mercatus on Lake Forest Hospital. Lesser had stated that even a nominal reduction in Lake Forest Hospital's revenues was unacceptable.

58. During the October 23, 2006 meeting, on information and belief, Trustees Peters, Barkhausen, and Lesser met outside the Board's meeting room to consider their options on how to force a re-vote on the special use question. This meeting was in violation of the Illinois Open Meetings Act.

59. After the approval of the special use, the Board moved to adopt the Mercatus site plan. However, while this motion was pending, Trustee Lesser moved to table the discussion to the next meeting because of the late hour. The Board voted on the motion to table, and it passed 6-0. Notwithstanding the motion to table, the Village Board continued the October 23 meeting after this vote. Trustee Peters voted on this issue, despite his conflict of interest. Therefore, the vote on the site plan (the only required vote) was tabled to the next meeting.

### Village Board reconsiders its "special use" vote and denies site plan approval

60. Between October 23 and November 13, Lake Forest Hospital pressured the Lake Bluff Board of Trustees to proceed with sham proceedings forcing Mercatus to face a re-vote on the "special use" approval and forcing votes against the Mercatus Center.

61. For example, Lake Forest Hospital sent a letter to the Lake Forester newspaper, signed by its President and CEO, that ran on November 9, 2006. This letter asserted that the Mercatus Center would provide redundant care to area residents and that Mercatus would jeopardize Lake Forest Hospital revenues. Through the letter, Lake Forest Hospital "implored" the Lake Bluff Board of Trustees to vote against the Mercatus Center. Through this and other similar conduct, Lake Forest Hospital injured its competitor Mercatus, separate and apart from the sham special use vote.

62. On information and belief, the Trustees also violated the Illinois Open Meetings Act by discussing how the trustees were going to vote during a secret meeting and

discussions separate from the entire Board of Trustees. The Trustees met in private immediately before the next meeting of the Board--on November 13, 2006--to discuss the re-consideration of the October 23 special use vote.

63.     At this secret meeting, on information and belief, Trustees Peters, Barkhausen, and Lesser requested that Trustee Marilyn Shineflug move for a vote to re-consider the special use permission. The Village President indicated in her comments at the very beginning of the November 13 meeting that the special use vote was going to be re-considered. Indeed, despite having approved the project in October, Trustee Shineflug moved to reconsider the special use vote.

64.     At the November 13 meeting, the motion to re-consider carried 5-0, with Trustee Peters abstaining this time. The motion to consider the special use was then tabled to the next meeting.

65.     Further, at the November 13 meeting, Mercatus representatives were not allowed to speak in defense of the site plan to further object to these sham proceedings. Mercatus expressly requested to be heard but was informed that comment was at the discretion of the Village Board. Prior to this meeting, the Village repeatedly assured Mercatus that it would receive a fair hearing and that, eventually, the Mercatus Center would be approved.

66.     Soon after the November meeting, but before the January 2007 re-vote, Trustees Barkhausen and Shineflug posted on their campaign website under the heading "facts" that it was "certain" that special use permission would not be granted--even though no vote denying the special use or site plan Mercatus Center had been held at this time, and the special use was approved at the October meeting. It is clear that defendants and the Village Board had discussions since the October meeting in violation of the Illinois Open Meetings Act.

67.    At the Village Board meeting on January 22, 2007, the Board of Trustees voted to deny Mercatus "special use" of the Shepard Land by a vote of 5-0 (Trustee Peters abstained).  This vote was conducted over the objection of Mercatus, who noted that the property was already zoned for this use, and that Lake Bluff law did not require a special use vote.  The Shepard Land was already zoned for medical office building use.

68.    Also at the January 22, 2007 meeting, Lake Forest Hospital re-iterated its argument that Mercatus Center may cause the Hospital to lose millions of dollars and that money would be drawn from patient care.

69.    Several trustees admittedly changed their votes at the January 2007 meeting from the October 2006 meeting because of the purported impact of the Mercatus Center on Lake Forest Hospital.  At the January 2007 meeting, one trustee even explained his vote against Mercatus as: "we don't need the threat to the hospital."  Several trustees admitted that they changed their votes because of the unique opportunity to vote on the "special use."  On information and belief, the trustees changed their vote after receiving pressure from Lake Forest Hospital.

70.    After the vote on the so-called "special use," the Village Board of Trustees voted on the Mercatus site plan.  Mercatus reminded the Village Board that the Architectural Board of Review approved the Mercatus Center site plan unanimously.  No evidence to the contrary was presented in criticism of Mercatus's site plan.

71.    However, as the Lake Bluff Village Attorney stated during the January meeting, once the "use" was denied for the land, site plan approval was effectively impossible to grant.  The Village Board voted to draft a resolution that denied the Mercatus site plan because

of the "special use vote" and without consideration of the listed criteria from Lake Bluff Ordinance 10-1-9(E).

72.     The Resolution drafted by the Village did not conform to the evidence presented.  The denial of the site plan and the denial of the "special use" for the Shepard Land were formally described in a February 12, 2007 Resolution prepared by the Village.  This Resolution incorrectly represented Lake Bluff law as it stated that two separate votes were required for approval--the special use vote and the site plan vote.

73.     The Resolution further listed so-called "findings of fact" with regard to the site plan approval.  The Resolution states that the proposed development was prohibited based on the Board's prior vote to deny the special use.  The written Resolution notably omits the October 23, 2006 approval and omits the plan to "table" site plan approval to the November 2006 meeting.

74.     At the time of the filing of this Complaint, Mercatus has not received site plan approval to build the Mercatus Center on the Shepard Land.

**Mercatus was substantially injured**

75.     As described above, the actions of defendants, both in and out of Lake Bluff hearings, have injured Mercatus.  Several physicians who had previously committed to work at the proposed Mercatus Center are no longer committed to the project, or to Mercatus.

76.     Mercatus was injured by its failed investment of over $100,000 on architectural, engineering and other professional services related to obtaining Lake Bluff's approval of its site plan.

77.     Mercatus lost millions of dollars in revenue it would have received from operating the Mercatus Center, as well as the value of the Mercatus Center itself.

78. The inaccurate and disparaging information communicated by Defendants, including Lake Forest Hospital, continues to make it difficult for Mercatus to recruit physicians in the Lake Bluff area, thus damaging its business model.

79. Further, as described above, Mercatus began plans in 2006 to open a physician center in Barrington, Illinois. The financial losses on the Lake Bluff project delayed the Barrington physician center and the damage to Mercatus' reputation in the medical community also delayed the project.

80. Further injuring Mercatus and demonstrating the anti-competitive intent of Lake Forest Hospital, the Hospital placed at least one telephone call to Advocate Good Shepherd Hospital in Barrington to warn Advocate Good Shepherd and advised Good Shepherd not to work with Mercatus. In addition, the Hospital contacted numerous other hospitals in the Chicago metropolitan areas in a further effort to injure Mercatus.

81. As stated earlier, Mercatus and ENH agreed to develop multiple physician centers. However, and further injuring Mercatus, as a result of the derailment of the Mercatus Center in Lake Bluff, ENH ended this relationship.

82. Because of the substantial investment in this project and its eventual denial, Mercatus has been injured in its ability to procure funding for other, similar ventures.

83. As demonstrated above, Mercatus has been injured by the sham proceeding and separately by actions outside of the Board hearing.

84. Consumers have been injured by the resulting lack of competition that Mercatus would have provided and as a result have fewer choices for diagnostic imaging services and pay more for such services than they would have paid had defendants not engaged

in anti-competitive behavior. Additionally, consumers have been injured by the lack of physicians who have been offered comprehensive physician services.

## COUNT I
### (Monopolization of Diagnostic Imaging Services Market)

85.     Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-84 as if set forth fully in this Count I.

86.     The relevant geographic product market to analyze Lake Forest Hospital's monopolization is eastern Lake County, Illinois. Specifically, this geographic area stretches from the northern boundary of Highland Park (to the south), to Interstate 94 (to the west), to the southern boundary of North Chicago (to the north) and to Lake Michigan (to the east). This geographic area contains a significant number of physicians who refer patients to diagnostic imaging facilities.

87.     The relevant product market is "diagnostic imaging services" including magnetic resonance imaging, computerized tomography, nuclear medicine, radiography, and ultrasonography, sold to patients of physicians whose offices are located in the geographic area.

88.     Defendant Lake Forest Hospital possess monopoly power in the relevant market. Defendant has willfully acquired, maintained, and exercised monopoly power in the relevant market.

89.     Lake Forest Hospital's anti-competitive conduct, as described above, are in violation of 15 U.S.C. § 2. Lake Forest Hospital has acted to acquire, maintain, and exercise its monopoly power by, *inter alia*:

- unlawfully blocking Mercatus site plan approval with the Village Board by knowingly, and without basis, engaging and orchestrating a sham proceeding before the Village of Lake Bluff;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, directly to the Village Board during that Board's meetings;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, outside of the political context, in connection with the Mercatus site plan approval;

- establishing a pattern of abuse of the government processes by the aforementioned conduct;

- interfering with the existing physician relationships Mercatus had established for the Mercatus Center;

- offering certain benefits and services to physicians that were either under contract with Mercatus or considering Mercatus and conditioning those benefits on those physicians' refusal to deal with Mercatus;

- offering certain benefits and services to physicians in an attempt to thwart competition from Mercatus and then refusing to deliver those benefits and services to physicians when Mercatus was excluded from the relevant market;

- interfering with prospective physician relationships Mercatus attempted to establish in the community;

- interfering with Mercatus' relationship with ENH;

- attempting to purchase the Shepard Land and falsely advising Shepard that Walgreens was interested in purchasing the Shepard Land;

- suggesting agreements in restraint of trade with Mercatus in other markets outside eastern Lake County so as to not compete in the Lake Forest/Lake Bluff geographic area;

- contacting Advocate Good Shepard Hospital to "warn" that hospital about Mercatus; and

- contacting other area hospitals regarding Mercatus in a further attempt to injure Mercatus.

90.     Lake Forest Hospital has excluded competitors from the diagnostic imaging services market.

91.     There are no business justifications for Defendant Lake Forest Hospital's conduct.  Defendant has not acquired its monopoly power through superior product, business acumen, or historical accident.

92.     Lake Forest Hospital is able to charge supra-competitive prices for diagnostic imagining services as a result of its anti-competitive actions.  The Hospital's prices for these imaging services were significantly higher than those that would be charged at the proposed Mercatus Center.  Additionally, denying Mercatus access to the market has reduced choice for diagnostic imaging services.

93.     Lake Forest Hospital acted with specific intent to monopolize the diagnostic imaging markets.

94.     The conduct described in this complaint, supra, impacted competition. The conduct described in the complaint impacted interstate commerce.

95.     Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

## COUNT II
### (Attempted Monopolization of Diagnostic Imaging Services Market)

96.     Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-95 as if set forth fully in this Count II.

97.     The relevant geographic product market to analyze Lake Forest Hospital's monopolization is eastern Lake County, Illinois.  Specifically, this geographic area stretches from the northern boundary of Highland Park (to the south), to Interstate 94 (to the west), to the southern boundary of North Chicago (to the north) and to Lake Michigan (to the east).  This geographic area contains a significant number of physicians who refer patients to diagnostic imaging facilities.

98.     The relevant product market is "diagnostic imaging services" including magnetic resonance imaging, computerized tomography, nuclear medicine, radiography, and ultrasonography, sold to patients of physicians whose offices are located in the geographic area.

99.     Lake Forest Hospital's anti-competitive conduct, as described above, in violation of 15 U.S.C. § 2, is a willful attempt to acquire and exert monopoly power.  Lake Forest Hospital has excluded competitor Mercatus from lawfully competing by, *inter alia*:

- unlawfully blocking Mercatus site plan approval with the Village Board by knowingly, and without basis, engaging and orchestrating a sham proceeding before the Village of Lake Bluff;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, directly to the Village Board during that Board's meetings;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, outside of the political context, in connection with the Mercatus site plan approval;

- establishing a pattern of abuse of the government processes by the aforementioned conduct;

- interfering with the existing physician relationships Mercatus had established for the Mercatus Center;

- offering certain benefits and services to physicians that were either under contract with Mercatus or considering Mercatus and conditioning those benefits on those physicians' refusal to deal with Mercatus;

- offering certain benefits and services to physicians in an attempt to thwart competition from Mercatus and then refusing to deliver those benefits and services to physicians when Mercatus was excluded from the relevant market;

- interfering with prospective physician relationships Mercatus attempted to establish in the community;

- interfering with Mercatus' relationship with ENH;

- attempting to purchase the Shepard Land and falsely advising Shepard that Walgreens was interested in purchasing the Shepard Land;

- suggesting agreements in restraint of trade with Mercatus in other markets outside eastern Lake County so as to not compete in the Lake Forest/Lake Bluff geographic area;

- contacting Advocate Good Shepard Hospital to "warn" that hospital about Mercatus; and

- contacting other area hospitals regarding Mercatus in a further attempt to injure Mercatus.

100.     Lake Forest Hospital has excluded competitors from the diagnostic imaging services market by the actions described herein.

101.     Lake Forest Hospital is able to charge supra-competitive prices for diagnostic imagining services as a result of its anti-competitive actions. The Hospital's prices for these imaging services were significantly higher than those that would be charged at the proposed Mercatus Center. Additionally, denying Mercatus access to the market has reduced choice for diagnostic imaging services.

102.     The sham proceedings and the campaign of disparagement undertaken by Lake Forest Hospital were not valid government action. The proceeding that purported to require a "special use" vote was baseless. Rather, these actions were intended to interfere with the activities of the Hospital's competitor, Mercatus and to harass Mercatus.

103.     Mercatus has been injured by the governmental process to which Lake Forest Hospital subjected it before the Village of Lake Bluff. Additionally, Mercatus was

injured by these activities notwithstanding the Lake Bluff Board's vote to deny its site plan approval on January 22, 2007. Lake Forest Hospital intended to injure Mercatus via these activities and not just by the January 2007 vote.

104. Mercatus was injured by Lake Forest Hospital's campaign of disparagement, *inter alia*: by Lake Forest Hospital's interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates; by the Hospital's interference with other physicians; by the Hospital's interference with the Mercatus relationship with ENH; by the Hospital's interference with Mercatus attempts to build a physician center in Barrington; and by damaging Mercatus's ability to procure funding.

105. Mercatus was injured by the false statements made by Lake Forest Hospital to the Village of Lake Bluff Board of Trustees. The Village only had the authority to review the site plan approval for certain considerations as enumerated by statute.

106. Mercatus was injured by the false statements made by Lake Forest Hospital outside the Village Board through the Hospital's campaign of disparagement, including, but not limited to, the Hospital's statements to physicians.

107. Lake Forest Hospital acted with specific intent to monopolize the diagnostic imaging markets.

108. Through its actions described supra, Lake Forest Hospital created a dangerous probability of achieving a monopoly, in violation of 15 U.S.C. § 2.

109. The conduct described in this complaint, supra, impacted competition. The conduct described in the complaint impacted interstate commerce.

110. Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

## <u>COUNT III</u>
**(Monopolization of Comprehensive Physician Services Market)**

111.     Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-110 as if set forth fully in this Count III.

112.     The relevant geographic product market to analyze Lake Forest Hospital's monopolization is eastern Lake County, Illinois.  Specifically, this geographic area stretches from the northern boundary of Highland Park (to the south), to Interstate 94 (to the west), to the southern boundary of North Chicago (to the north) and to Lake Michigan (to the east).

113.     The relevant product market is "comprehensive physician services" including business services such as billing assistance, clinical services such as on-site diagnostic imaging services, and real estate services, such as leasing space to physicians.  Lake Forest Hospital is the only entity in the geographic area that offered, and currently offers, comprehensive physician services.

114.     Defendant Lake Forest Hospital possess monopoly power in the relevant market.  Defendant has willfully acquired, maintained, and exercised monopoly power in the relevant market.

115.     Lake Forest Hospital's anti-competitive conduct, as described above, are in violation of 15 U.S.C. § 2.  Lake Forest Hospital has acted to acquire, maintain, and exercise its monopoly power by, *inter alia*:

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, directly to the Village Board during that Board's meetings;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, outside of

the political context, in connection with the Mercatus site plan approval;

- interfering with the existing physician relationships Mercatus had established for the Mercatus Center;

- offering certain benefits and services to physicians that were either under contract with Mercatus or considering Mercatus and conditioning those benefits on those physicians' refusal to deal with Mercatus;

- offering certain benefits and services to physicians in an attempt to thwart competition from Mercatus and then refusing to deliver those benefits and services to physicians when Mercatus was excluded from the relevant market;

- on information and belief, threatening physicians and intimidating those physicians from supporting or practicing at the Mercatus Center;

- interfering with prospective physician relationships Mercatus attempted to establish in the community;

- interfering with Mercatus' relationship with ENH;

- contacting Advocate Good Shepard Hospital to "warn" that hospital about Mercatus; and

- contacting other area hospitals regarding Mercatus in a further attempt to injure Mercatus.

116.    Lake Forest Hospital has excluded competitors from the comprehensive physician services market by the actions described herein.

117.    Lake Forest Hospital is able to charge supra-competitive prices for comprehensive physician services, including physician rent, as a result of its anti-competitive actions.  The Hospital's prices for these real estate services were significantly higher than those that would be charged at the proposed Mercatus Center.  Because Lake Forest Hospital has denied Mercatus access to the comprehensive physician services market, the market as a whole has experienced and will continue to experience reduced choice for physician services.

118.    There are no business justifications for Defendant Lake Forest Hospital's conduct.  Defendant has not acquired its monopoly power through superior product, business acumen, or historical accident.

119.    Lake Forest Hospital acted with specific intent to monopolize the comprehensive physician services markets.

120.    The conduct described in this complaint, supra, impacted competition. The conduct described in the complaint impacted interstate commerce.

121.    Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

## <u>COUNT IV</u>
### (Attempted Monopolization of Comprehensive Physician Services Market)

122.    Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-121 as if set forth fully in this Count IV.

123.    The relevant geographic product market to analyze Lake Forest Hospital's monopolization is eastern Lake County, Illinois.  Specifically, this geographic area stretches

from the northern boundary of Highland Park (to the south), to Interstate 94 (to the west), to the southern boundary of North Chicago (to the north) and to Lake Michigan (to the east).

124.    The relevant product market is "comprehensive physician services" including business services such as billing assistance, clinical services such as on-site diagnostic imaging services, and real estate services, such as assistance with leasing arrangements. Lake Forest Hospital is the only entity in the geographic area that offered, and currently offers, comprehensive physician services.

125.    Lake Forest Hospital's anti-competitive conduct, as described above, in violation of 15 U.S.C. § 2, is a willful attempt to acquire and exert monopoly power. Lake Forest Hospital has excluded competitor Mercatus from lawfully competing by, *inter alia*:

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, directly to the Village Board during that Board's meetings;

- making willful, deliberate misrepresentations regarding the Mercatus Center and its impact on Lake Forest Hospital, outside of the political context, in connection with the Mercatus site plan approval;

- interfering with the existing physician relationships Mercatus had established for the Mercatus Center;

- offering certain benefits and services to physicians that were either under contract with Mercatus or considering Mercatus and conditioning those benefits on those physicians' refusal to deal with Mercatus;

- offering certain benefits and services to physicians in an attempt to thwart competition from Mercatus and then refusing to deliver those benefits and services to physicians when Mercatus was excluded from the relevant market;

- on information and belief, threatening physicians and intimidating those physicians from supporting or practicing at the Mercatus Center;

- interfering with prospective physician relationships Mercatus attempted to establish in the community;

- interfering with Mercatus' relationship with ENH;

- contacting Advocate Good Shepard Hospital to "warn" that hospital about Mercatus; and

- contacting other area hospitals regarding Mercatus in a further attempt to injure Mercatus.

126. Lake Forest Hospital has excluded competitors from the comprehensive physician services market by the conduct described herein.

127. Because Lake Forest Hospital has denied Mercatus access to the comprehensive physician services market, the market as a whole has experienced and will continue to experience reduced choice and supra-competitive prices for comprehensive physician services.

128. Mercatus was injured by Lake Forest Hospital's campaign of disparagement, *inter alia*: by Lake Forest Hospital's interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates; by the Hospital's

interference with other physicians; by the Hospital's interference with the Mercatus relationship with ENH; by the Hospital's interference with Mercatus attempts to build a physician center in Barrington; and by damaging Mercatus's ability to procure funding.

129.    Mercatus was injured by the false statements made by Lake Forest Hospital outside the Village Board through the Hospital's campaign of disparagement, including, but not limited to, the Hospital's statements to physicians.

130.    Lake Forest Hospital acted with specific intent to monopolize the comprehensive physician services markets.

131.    Through its actions described supra, Lake Forest Hospital created a dangerous probability of achieving a monopoly, in violation of 15 U.S.C. § 2.

132.    The conduct described in this complaint, supra, impacted competition. The conduct described in the complaint impacted interstate commerce.

133.    Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

## COUNT V
### (Section 1 Conspiracy in Restraint of Trade)

134.    Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-133 as if set forth fully in this Count V.

135.    Lake Forest Hospital entered into a conspiracy with other, unnamed individuals, in restraint of trade, in violation of 15 U.S.C. §1.

136.    Lake Forest Hospital conspired with these unnamed co-conspirators in an attempt to increase Lake Forest Hospital's market power in the relevant market. Defendant's conduct has unreasonably restrained trade and has had the impact of allowing the Hospital to

raise prices and exclude competitors, thus harming consumers who utilize and pay for diagnostic imaging services.

137.     Lake Forest Hospital's anti-competitive conduct is described above.  Lake Forest Hospital sought agreements with other health care entities to divide the market for health care, diagnostic imaging services, and comprehensive physician services and exclude competition from the relevant market.

138.     Additionally, Lake Forest Hospital and their co-conspirators forced Mercatus to be subject to an unnecessary sham proceeding to face a vote on the "special use" permission.   Lake Forest Hospital and their co-conspirators, on information and belief, orchestrated secret meetings, in violation of the Illinois Open Meetings Act, to set the agenda for Mercatus approval and denied the Mercatus site plan approval on grounds relating to stifling competition in the diagnostic imaging market, and failed to approve or disapprove the site plan based on proper statutory considerations

139.     Lake Forest Hospital and their co-conspirators sought and enforced agreements in restraint of trade to keep Mercatus from entering the eastern Lake County market to allow Lake Forest Hospital to dominate that market and the provision of diagnostic imaging services and comprehensive physician services.

140.     Lake Forest Hospital is able to charge supra-competitive prices for diagnostic imagining services as a result of its anti-competitive actions.  The Hospital's prices for these imaging services were significantly higher than those that would be charged at the proposed Mercatus Center.  Additionally, denying Mercatus access to the market has reduced choice for diagnostic imaging services.

141.     Mercatus was injured by Lake Forest Hospital's campaign of disparagement, *inter alia*: by Lake Forest Hospital's interference with the physician relationships with North Suburban Medical Associates and Lake Forest Medical Associates; by the Hospital's interference with other physicians; by the Hospital's interference with the Mercatus relationship with ENH; by the Hospital's interference with Mercatus attempts to build a physician center in Barrington; and by damaging Mercatus's ability to procure funding.

142.     Mercatus has been injured by the governmental process to which Lake Forest Hospital subjected it before the Village of Lake Bluff.  These activities described above undermined the government decision-making process and robbed it of its legitimacy.

143.     Additionally, Mercatus was injured by these activities notwithstanding the Lake Bluff Board's vote to deny its site plan approval on January 22, 2007.  Lake Forest Hospital intended to injure Mercatus via these activities and not solely by the January 2007 vote.

144.     The sham proceedings and the campaign of disparagement undertaken by Lake Forest Hospital were not valid government action.  The proceeding that purported to require a "special use" vote was baseless.  Rather, these actions were intended to interfere with the activities of the Hospital's competitor, Mercatus and to harass Mercatus.

145.     Mercatus was injured by the false statements made by Lake Forest Hospital to the Village of Lake Bluff Board of Trustees about the purported impact of the Mercatus Center.  (The Village only had the authority to review the site plan approval for certain considerations as enumerated by statute.)  Mercatus was injured by the false statements made by Lake Forest Hospital outside the Village Board through the Hospital's campaign of disparagement, including, but not limited to, the Hospital's statements to physicians.

146.    The conspiracy and the conduct described in this complaint, supra, impacted competition.   The conspiracy and the conduct described in the complaint impacted interstate commerce.

147.    Lake Forest Hospital's conduct has proximately caused damages to Mercatus in an amount to be determined at trial.

### COUNT VI
**(Tortious Interference with Prospective Economic Advantage – Physician Relationships)**

148.    Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-147 as if set forth fully herein this Count VI.

149.    Mercatus had a reasonable expectation of entering into valid business relationships in connection with its site plan for the Mercatus Center.   Specifically, Mercatus entered into letter agreements with two local, well-known group medical practices, North Suburban Medical Associates and Lake Forest Medical Associates.   Both practices sent diagnostic imaging to Lake Forest Hospital.   These two medical practices would open offices in the proposed Mercatus Center, and begin obtaining their diagnostic imaging from the Mercatus Center, and would no longer send diagnostic imaging to Lake Forest Hospital.

150.    Defendant Lake Forest Hospital knew of the Mercatus expectancy of valid business relationships and, specifically, knew that Mercatus had contracted with these two medical practices.

151.    Defendant intentionally and unjustifiably interfered with these prospective business relationships and prevented them from ripening into valid relationships.

152.    Lake Forest Hospital met with the North Suburban Group in September 2006.  North Suburban and its attorney informed Lake Forest Hospital that North Suburban was under contract with Mercatus for the Mercatus Center.   However, Lake Forest Hospital

continued to pressure North Suburban to disengage from the Mercatus agreement. All doctors in the North Suburban Group held privileges at Lake Forest Hospital, so this pressure carried substantial weight.

153.     After the September meeting, North Suburban requested that it be released from the "no shop" provision in the Mercatus letter agreement. At that point, the doctors were no longer committed to the Mercatus Center.

154.     In addition, Lake Forest Hospital met with Dr. Gary Schaffel of Lake Forest Medical Associates to discuss his medical group's letter agreement with Mercatus, in an attempt to pressure Dr. Schaffel to end his relationship with Mercatus. Dr. Schaffel and the other doctors in his group also had privileges at Lake Forest Hospital.

155.     Additionally Lake Forest Hospital spoke to numerous other physicians and health care entities about participating in the Mercatus Center. Defendant Lake Forest Hospital began a negative, untrue publicity campaign against Mercatus and the Mercatus Center that had the effect of interfering with the business relationships.

156.     Mercatus was damaged by the Defendants' intentional and unlawful interference.

## <u>COUNT VII</u>
### (Tortious Interference with Prospective Economic Advantage – ENH Relationship)

157.     Mercatus adopts and incorporates by reference each of the allegations in paragraphs 1-156 as if set forth fully in this Count VII.

158.     As of mid-2006, Mercatus had a pre-existing relationship with Evanston Northwestern Healthcare ("ENH") and to develop additional physician centers with ENH. Mercatus and ENH were already partners in the Mercatus Vernon Hills physician center. In addition, ENH and Mercatus intended to partner for healthcare services related to the Mercatus

Center. Further, ENH and Mercatus intended to form a business relationship in connection with at least three other physician centers.

159.    Mercatus had a reasonable expectation of entering into a new, valid business relationship with ENH in connection with its site plan for the Mercatus Center and for further centers.

160.    Defendant knew that Mercatus had this expectancy with ENH.

161.    Defendant intentionally and unjustifiably interfered with this prospective business relationship and prevented it from ripening into a valid relationship. Defendant's anti-competitive actions described above caused the relationship to deteriorate and end.

162.    Additionally, Defendant Lake Forest Hospital began a negative, untrue publicity campaign against Mercatus and the Mercatus Center that had the effect of interfering with the business relationship with ENH.

163.    In addition, Lake Forest Hospital forced the sham hearing in connection with the Shepard Special Uses, even though there was no requirement that the Mercatus Center obtain such special use permission. This unjustified interference also prevented these prospective business relationships from becoming valid business relationships.

164.    Mercatus was damaged by the Hospital's intentional and unlawful interference.

**WHEREFORE**, Mercatus prays for the entry of judgment:

(1)    An award of damages against Defendant in an amount to be determined at trial;

(2)    Awarding attorney's fees, expenses, costs and prejudgment interest pursuant to 15 U.S.C. § 15; and

(3)    Providing such other and further relief as the Court deems just.

## <u>JURY DEMAND</u>

Mercatus demands a jury on all issues triable at law.

Date: March 13, 2008

RESPECTFULLY SUBMITTED

WINSTON & STRAWN LLP

 /s/ William E. Walsh

W. Gordon Dobie
Brian D. Werner
William E. Walsh
35 West Wacker Drive
Chicago, IL 60601
Attorneys for Mercatus, L.L.C.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certify that on **March 13, 2008**, I caused a copy of the foregoing **Amended Complaint** to be served via electronic filing on the parties below:

David Marx, Jr.
Stephen Y. Wu
Erin C. Arnold
McDermott Will & Emery
227 West Monroe, 44th Floor
Chicago, IL 60602
(312) 372-2000
dmarx@mwe.com
swu@mwe.com
earnold@mwe.com

  /s/ William E. Walsh_____