**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MERCATUS GROUP LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **07 C 2042** |
| | ) | |
| **LAKE FOREST HOSPITAL,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Mercatus Group LLC sued Lake Forest Hospital, the Village of Lake Bluff, and Village Trustees Michael Peters, David Barkhausen, and Rick Lesser in connection with an alleged plot to monopolize the diagnostic medical imaging market in Eastern Lake County by preventing Mercatus from opening a facility in that market.[1] Lake Forest Hospital's motion for summary judgment on Mercatus' antitrust and supplemental state claims is before the court. For the following reasons, Lake Forest Hospital's motion is granted as to Mercatus' federal claims and the court declines to exercise jurisdiction over the remaining state law claims.

### I.       Background

The following facts are undisputed unless otherwise noted.

### A.       The Parties

Lake Forest Hospital is an Illinois nonprofit corporation with its principal place of business in Lake Forest, Illinois. Mercatus was founded in 2003 by Mr. Chris Joseph. It partners with independent physicians to develop and operate physician centers, which are off-campus medical office buildings that provide a variety of services to physicians. The clinical services

---

[1] The court previously dismissed the claims against the Village of Lake Bluff and Village Trustees Michael Peters, David Barkhausen, and Rick Lesser for failure to state a claim, leaving Lake Forest Hospital as the sole defendant.

enable participating practices to offer comprehensive care to their patients, including diagnostic imaging. Mercatus also leases office space to physicians and provides business services including billing services, electronic medical records hosting, telecommunications services, claims processing, marketing support, staffing, and collections.

Mercatus allows physicians to share in the profits from the center, including as real estate partners. Mercatus also initially allowed physicians to share in the profits from ancillary services, including imaging but ceased doing so in March of 2007.

### B.     Mercatus' Efforts to Expand into Lake Bluff

Mercatus operates a physician center in Vernon Hills, Illinois, at which it delivers diagnostic imaging services including nuclear imaging, magnetic resonance imaging and computed tomography scans. In 2004, Mercatus began plans to construct a physician center in Lake Bluff, Illinois. It thus sought appropriately zoned land. It ultimately reached an agreement to lease the Shepard Land (so-called because it already featured an automotive sales dealership on part of the property called Shepard Chevrolet), which was zoned L-2, a zone that generally permits medical office buildings.

### 1.     The Nature of the Proceedings Before the Board

Mercatus participated in a number of hearings before the Village Board in an attempt to gain support for its proposed development. Some attorneys attended at least some of these hearings. Letchinger Tr. (Tab 14) at 39:24 to 40:16 (attorneys Sandy Stein – attorney for an unidentified party– and Peter Friedman – the Village of Lake Bluff's attorney – were present at a

Board meeting); 96:12-24 (unidentified attorneys were present at Board meetings).[2]  As noted by Lake Forest Hospital, however, Mercatus has not directed the court's attention to any evidence indicating that the Hospital's counsel were among the attorneys present at any of the Board proceedings.  The Board conducted the hearings before it in an orderly fashion, recorded them, and provided notice of the hearings and a written decision.

## 2.      Mercatus' Efforts to Secure Approval for its Project

In April of 2006, Mercatus presented its plans for the proposed Lake Bluff physician center to the Lake Bluff Board of Trustees ("Village Board").  Lake Forest Hospital representatives spoke against Mercatus' proposed development.  Mercatus believed that some of these statements were inaccurate and designed to thwart its planned project.  During the April 2006 meeting, the Village Board did not reference any special use ordinance governing the Shepard land or state that Mercatus needed to obtain development approval prior to proceeding with its project.

In September of 2006, the Lake Bluff Architectural Board of Review unanimously approved Mercatus' site plan, contingent upon review of proposed lighting and signage plans.  Assuming Mercatus satisfied these contingencies, the Architectural Board of Review's

---

[2]  It appears that an attorney named Sandy Stein was also present during at least one Board meeting.  Pl. Ex. 14 at 40:91-6.  The parties regrettably do not identify this person in their Rule 56.1 statements or summary judgment filings, so the court cannot ascertain who his/her client might be.  This problem is illustrative of the issues the court faced when addressing the summary judgment motion:  the parties generally assume that the court is familiar with the large cast of characters and the chain of events at the heart of the parties' dispute and do not consistently provide identifying details in their filings.  This practice, coupled with the parties' decision to omit any summary of the facts from their filings and to instead rely only on their Rule 56.1 statements, contributed to the delay in resolving the instant motion for summary judgment.

decision meant that the Village Board could only deny site plan approval to Mercatus based on a two-thirds vote.

The parties, however, disagree as to the Village Board's consideration of development approval for Mercatus' proposed facility separately from site plan approval. According to Lake Forest Hospital, the Village Board had unfettered discretion in deciding whether to grant development approval to Mercatus. Lake Bluff's special use ordinance (Df. Ex. 10) and the amendments to that ordinance in 1976 (Df. Ex. 11) and 1979 (Df. Ex. 12) contain the discretionary factors the Village Board was required to consider when deciding whether to grant development approval. In addition, Lake Forest Hospital directs the court's attention to the conclusion of the Village Attorney (Trustee Peters) that denial of development approval did not require written findings or a written resolution but, instead, could be done via an oral motion and vote. Finally, Lake Forest Hospital stresses that the Village Board considered comments from the public but representatives from Mercatus and Lake Forest Hospital never provided sworn testimony before the Board regarding development or special use approval.

On the other hand, Mercatus asserts that the Village Board's decision to split off the decision to vote on developmental approval from the decision to vote on site plan approval was improper and flowed from the Board's desire to illegitimately deny Mercatus' site plan. It also challenges the reliance on Trustee Peters' views regarding the procedure that the Village Board was obligated to follow vis-a-vis Mercatus' project, contending that: (1) Trustee Peters' employment by Lake Forest Hospital renders his views suspect; and (2) Lake Bluff's zoning code (§ 10-2-6(E), Df. Tab 16 at pp. 33-39) is at odds with Trustee Peters' position as his method of ruling on a special use permit is not prescribed by ordinance.

On October 23, 2006, Mercatus came before the Village Board to seek approval of its site plan. The meeting then followed the same path as the April meeting, as Lake Forest Hospital representatives spoke against Mercatus' plan, and Mercatus believed that some of these statements were inaccurate and designed to thwart its project. Mercatus contends that as a result of Lake Forest Hospital's influence on the proceedings (particularly through the presence of Trustee Peters – a Lake Forest Hospital employee – on the Village Board), the Village Board improperly created a separate "land use"/development approval requirement that is not based on Lake Bluff's zoning code.

In response, Lake Forest Hospital contends that the Village Board proceedings were proper, arguing that: (1) Mercatus failed to cite to evidence showing that Lake Forest Hospital was responsible for the Village Board's decision to require Mercatus to seek development approval; (2) the Village attorney sufficiently explained the basis for the Board's decision to require Mercatus to seek development approval in addition to site plan approval; and (3) Mercatus' reading of the impact of Lake Bluff's zoning ordinances on the Shepard land is incorrect. The October meeting ended with a vote by the Village Board to grant development approval to Mercatus based upon the text of the special use ordinance and its amendments and to postpone deliberation on whether to grant site plan approval to Mercatus until the next meeting.

### C.     Mercatus' Proposed Project Flatlines

In November of 2006, the Village Board voted to reconsider its earlier approval of a portion of Mercatus's project. In early 2007, the Board considered Mercatus' proposal again

and denied both development and site plan approval.[3] Mercatus contends that the lack of approval was due to improper influence by Lake Forest Hospital, pointing to a statement by Village Board President Christine Letchinger to the effect that Mercatus' project failed for political reasons. Mercatus' spin on this statement is that "political reasons" was a euphemism for a desire to protect Lake Forest Hospital.

The record shows, however, that while Ms. Letchinger knew that Lake Forest Hospital opposed Mercatus' project, her "political reasons" comment also referred to her belief that supporting the Mercatus project would not further her efforts to get support for a housing development project. Ms. Letchinger also testified at her deposition that the Board considered the Village's comprehensive plan for the area, which called for retail projects, as well as concerns about traffic and economic impact, the good of the community, and overdevelopment when voting on Mercatus' project. In addition, she stated that she believed that Lake Forest Hospital had mounted a successful lobbying effort against the Mercatus project.

The parties disagree regarding whether more than two-thirds of the Board indicated that concerns about competition with Lake Forest Hospital influenced their vote. The court finds that Mercatus has pointed to evidence that would support a jury's conclusion that concern

---

[3] Lake Bluff's zoning code permits it to deny approval for a site plan based on the following criteria: (1) the site plan application is materially incomplete; (2) the proposed site plan fails to meet applicable zoning standards; (3) the proposed site plan is detrimental to the use and enjoyment of the surrounding property; (4) the proposed site plan creates undue traffic congestion or safety hazards; (5) the site plan landscaping does not provide adequate shielding from or for nearby uses; (6) the proposed site plan creates unreasonable drainage or erosion problems; (7) the proposed site plan places unwarranted burdens on utility systems; and (8) restrictions related to the Central Business District (not applicable to the Mercatus project). *See* Lake Bluff Zoning Code § 10-1-9(D)(4), 10-1-9(E)(1)-(8), Def. Ex. 14 at 14-009-10.

about competition between Lake Forest Hospital and the proposed Mercatus facility was one of many factors that motivated the members of the Board when they voted. *See* Def. Ex. 13 at 13-029:8-15 (Rener) (noting that "a lot" of residents and community members wanted the project to be denied, apparently because they were satisfied with Lake Forest Hospital's performance, while other residents supported the project because they wanted Lake Forest Hospital's performance to improve); 13-034:23 to 13-035:19 (Surkamer) (changed vote due to satisfaction with Lake Forest Hospital and his belief that there are better uses for the property and "we don't need the threat to the hospital"); 13-035:22 to 13-036:24 (Barkhausen) (opining that competition that causes Lake Forest Hospital to lose money harms the interest of residents and stating that the interest of residents must be protected); 13-038:8-20 (Lesser) (the use of the parcel as retail "and the continued viability of the hospital are what are in the best interests of the people of the Village of Lake Bluff"); Letchinger Tr. at 55:4-14 ("Lake Forest Hospital's [concerns about competition] was part of it but not entirely all of it" as concerns about traffic, development, and retail space also drove the decision to vote against the Mercatus plan).

Mercatus also points to numerous portions of the record that purportedly show that Lake Forest Hospital was behind the Board's decision to reject Mercatus' plan. The court agrees that the record demonstrates that Lake Forest Hospital lobbied against the proposed Mercatus facility, *see, e.g.,* Mercatus' Tab 69 (under seal), but that its efforts were one of many factors underlying the Board's decision to vote against the project. The lobbying effort had three prongs: a Village of Lake Bluff prong, a physician-strategy prong, and a media-public

relations prong.[4]  In addition, John Durkin (Mercatus' expert) opined that Lake Forest Hospital

also encouraged other hospitals to make it more difficult for Mercatus to enter the market.

Durkin Report (Df. Tab 10) at ¶ 38, pp. 10-013 to 10-014.[5]

After the Village Board rejected Mercatus' project, it issued findings of fact supporting

the denial of site plan approval as required by Lake Bluff's zoning ordinances.  *See* Lake Bluff

Zoning Code § 10-1-9(D)(4), 10-1-9(E)(1)-(8), Def. Ex. 14 at 14-009-10.  The proffered

reasons – which Mercatus contends were pretextual – were:

- The development was prohibited under the terms and conditions of the Special Use Ordinance which required a denial of Site Plan Approval pursuant to Paragraphs 10-1-9E1 and 10-1-9E2 of the Lake Bluff Zoning Regulations;

- the existing access and traffic control was insufficient to meet the access and traffic requirements of the proposed development; and

- the proposed development, as a non-retail medical office building, was inconsistent with the Village's Comprehensive Plan which identified the property on which Mercatus sought to develop as a target for retail and auto-related uses.

---

[4]  In support of its statement of fact regarding the three pronged approach, Mercatus points to deposition testimony of Damon Havill, director of planning and business development for Lake Forest Hospital.  The court agrees with Mercatus' characterization of Mr. Havill's testimony.  Lake Forest Hospital's denial of the corresponding portions of Mercatus' Rule 56.1 statement is thus unavailing, as Mr. Havill said what he said.  Thus, Lake Forest Hospital cannot redline portions of Mr. Havill's deposition.

[5]  Unsurprisingly, Lake Forest Hospital disagrees with Mr. Durkins' views.  However, the court declines to accept Lake Forest Hospital's invitation to reject Mr. Durkin's report wholesale as Mr. Durkin considered evidence in the record that a fact-finder could find was consistent with his views.  *See, e.g.,* Pl. Ex. 8 at 178-180 (CEO of Lake Forest Hospital testified that he spoke with staff at Highland Park Hospital, and Advocate Condell Medical Center to urge them not to support the project); Pl. Ex. 73 (emails between a physician liaison at Lake Forest Hospital to Lake Forest Hospital's CEO dated after the Village Board and Evanston Northwestern Hospital withdrew their support for Mercatus and lauding Lake Forest Hospital for its successful efforts to prevent Mercatus from "invad[ing] other territories around the Suburbs!!!").

### D. Mercatus' Complaint

Mercatus filed suit, contending that Lake Forest Hospital's lobbying effort against Mercatus' project was underhanded and based on a series of lies meant to prevent a competitor from opening up shop nearby and wicking away patients. Specifically, Mercatus' amended complaint alleges that Lake Forest Hospital monopolized or attempted to monopolize the market for diagnostic imaging services in Eastern Lake County (Counts I & II), monopolized or attempted to monopolize the market for comprehensive physician services in Eastern Lake County (Counts III & IV), conspired to unlawfully restrain trade (Count V), and tortiously interfered with Mercatus' prospective economic advantage by affecting its relationships with physicians and Evanston Northwestern Healthcare (Counts VI & VII).

## II. Analysis

### A. Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

**B.      Lake Forest Hospital's Motion for Summary Judgment**

In its order addressing Lake Forest Hospital's motion to dismiss, the court found

(among other things) that it could not decide if the *Noerr-Pennington* doctrine immunized

Lake Forest Hospital's alleged misrepresentations to the Village Board because at the motion

to dismiss stage, it could not determine if the Village Board acted in an adjudicatory or

legislative capacity when it denied Mercatus' development plans.[6]  The court also declined to

consider whether Mercatus had shown that an alleged agreement in restraint of trade existed

because the parties did not sufficiently address whether Mercatus had standing to raise an

antitrust claim.

In its motion for summary judgment, Lake Forest Hospital contends that Mercatus

cannot prevail on its federal antitrust claims – that Lake Forest Hospital monopolized or

attempted to monopolize the market for diagnostic imaging services and comprehensive

physician services in Eastern Lake County (Counts I – IV) and conspired to unlawfully restrain

trade (Count V) –  because its lobbying of the Village of Lake Bluff Board of Trustees is

immunized from antitrust liability by the *Noerr-Pennington* doctrine.  Alternatively, Lake

Forest Hospital argues that Mercatus' antitrust claims fail on the merits, asserting that

Mercatus cannot establish essential elements of an antitrust claim, such as its alleged product

and geographic markets, the existence of or the likelihood of Lake Forest Hospital acquiring

monopoly power, or the existence of a conspiracy in restraint of trade.

---

[6]  Mercatus amended its complaint after the court issued its decision ruling on the motion
to dismiss.  The amended complaint removed the counts directed at the Village defendants and
added three new antitrust claims directed at Lake Forest Hospital, but did not otherwise change
the allegations directed at Lake Forest Hospital.

With respect to Mercatus' state law claims that Lake Forest Hospital tortiously interfered with Mercatus' prospective economic advantage by affecting its relationships with physicians and Evanston Northwestern Healthcare (Counts VI-VII), Lake Forest Hospital contends that it is entitled to summary judgment because its efforts to retain physician relationships are protected by the competition privilege and its conduct did not cause Evanston Northwestern Healthcare to end its relationship with Mercatus.

### 1.  The *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine originated in the antitrust context and shields parties from liability based on, among other things, lobbying efforts and public statements.  *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961) ("no violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws"); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965) ("[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition.  Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act"); *see also Tarpley v. Keistler*, 188 F.3d 788 (7th Cir. 1999) (under the First Amendment, "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others").

This means that under the *Noerr-Pennington* doctrine, "those who petition government for redress are generally immune from antitrust liability."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993).  The doctrine applies to petitioning activity directed at legislative, executive, and judicial branches of federal and state

governments.  *See* J. von Kalinowski, 3 Antitrust Laws and Trade Regulation § 50.03[1] (2d ed. Matthew Bender) (collecting cases).

### a.    The Sham Exception

There are a number of exceptions to *Noerr-Pennington* immunity.  In this case, the parties focus on the sham exception.  This exception covers "situations in which persons use the governmental process[,] as opposed to the outcome of that process," to directly harm or harass another party.  *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991); *see also Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 998 F.2d 391, 397 (7th Cir. 1993).  If the sham exception applies, the petitioning entity is not protected by the First Amendment's right to petition and may be subject to antitrust liability.  *See City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. at 380 ("A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so through improper means) (internal citations and quotations omitted); *75 Acres, LLC v. Miami-Dade County, Fla.*, 338 F.3d 1288 (11th Cir. 2003) ("There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified").

### b.    Legislative or Adjudicative?

The scope of the sham exception differs depending on whether the petitioning conduct is directed at a legislative or adjudicative body.  "When the concerted activities occur in a legislative or other non-adjudicatory governmental setting, they are not within the Sherman

Act even though they include conduct that can be termed unethical, such as deception and misrepresentation." *Metro Cable Co. v. CATV of Rockford, Inc*., 516 F.2d 220, 228 (7th Cir. 1975) (internal citations and quotations omitted). Based on this rule, Lake Forest Hospital contends that the proceedings before the Board were legislative, as opposed to adjudicative, and Mercatus unsurprisingly argues the opposite.

As the Seventh Circuit has recognized in the due process context, "the line between legislation and adjudication is not always easy to draw." *LC & S, Inc. v. Warren County Area Plan Comm'n*, 244 F.3d 601, 603 (7th Cir. 2001) (addressing due process and void for vagueness challenge to zoning law). Generally, action is legislative in nature if it involves "the promulgation of general or prospective legislation or establish[es] guidelines by which the future conduct of certain groups is to be judged," while actions are adjudicative if they "involve the application of already enacted ordinances or recognized policies to specific instances." *Reed v. Village of Shorewood*, 704 F.2d 943, 952-53 (7th Cir. 1983) (distinguishing between adjudicative and legislative actions in the context of a challenge to a zoning law under the Fourteenth Amendment due process clause). For purposes of *Noerr-Pennington* immunity, however, factors germane to determining if a governmental body acts in a legislative or adjudicative capacity are the "degree of political discretion" exercised by the entity, "whether it makes or administers laws, and whether it follows enforceable standards of review, or bears other indicia of adjudicatory bodies." *See* J. von Kalinowski, 3 Antitrust Laws and Trade Regulation at § 50.04[3][c]; *see also Metro Cable Co. v. CATV of Rockford, Inc*., 516 F.2d at 228.

Mercatus' position, in essence, is that the Village Board applied existing ordinances to its property and hence by definition must have acted in an adjudicative capacity. It also stresses that: (1) the Lake Bluff Architectural Board of Review conducted public hearings about Mercatus' plan and because it approved the project, two-thirds of the Village of Lake Bluff Board was required to vote against Mercatus to defeat the project; (2) the Village Board was required to issue findings of fact containing specific reasons why Mercatus' project did not pass muster under Lake Bluff's zoning ordinances, *see* Lake Bluff Zoning Code § 10-1-9(D)(4), 10-1-9(E)(1) - (8) (Df. Ex. 14 at 14-009-10); and (3) the Village Board followed procedural rules during the hearings, information packets were provided to Trustees, and a record was created via video recordings of the proceedings and minutes. It also appears that some lawyers attended at least some of the hearings before the Board, although it does not appear that counsel for the Hospital was present.

At the motion to dismiss stage, the court declined to determine whether Village Board acted in a legislative or adjudicatory capacity because it construed Mercatus' allegations in the light most favorable to Mercatus. The record at this point, however, is more developed and while this is a difficult area of the law, the court is not persuaded that the Village's zoning decision was adjudicative.

The court begins with the fact that the Village Board delegated initial consideration of Mercatus' plan to the Lake Bluff Architectural Board of Review, which conducted public hearings, but then voted on the proposal after considerable lobbying efforts from proponents and opponents of Mercatus' project. This chain of events does not demonstrate that the

Village Board acted adjudicatively, given that the Board retained the ultimate power to reject the Architectural Board of Review's decision with a two-thirds vote.

Mercatus also makes much of the fact that the Board based its decision, at least in part, on the effect that the Mercatus project would have on Lake Forest Hospital. The record shows that the Board members considered the likely outcome of increased competition on the hospital. Nevertheless, this is not per se impermissible. *See Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988) (legislatures need not use adjudicative-type procedures when ruling on zoning requests and may "base their actions on considerations – such as the desire of a special-interest group for redistributive legislation in its favor – that would be thought improper in judicial decision-making"); *see also Standard Bank & Trust Co. v. Village of Orland Hills*, 891 F.Supp. 446, 451 (N.D. Ill. 1995) (defendant local government's decision regarding proposed building plans and permits is legislative because it was "free to take into consideration ethical and political issues when deciding whether to accept the proposed business plans").

Moreover, the court's study of the extensive record in this case shows that at heart, this matter is a simple zoning dispute brought by an entity who received an adverse decision. It is true that the Board conducted its proceedings in an orderly fashion, recorded them, and provided notice of hearings and a written decision. However, with the benefit of a full record, these factors alone are not enough to transform the Board into an adjudicative body. Critically, it is undisputed that the Board members were the recipients of vigorous ex parte lobbying efforts from both sides prior to the final vote. They were also authorized to consider what they believed was best for the community when voting. *See Metro Cable Co. v. CATV of Rockford,*

*Inc.*, 516 F.2d at 228 (allegedly unethical lobbying of Rockford City Council in connection with applications for a cable television franchise did not violate Sherman Act because the "Rockford City Council was a legislative body, acting as such, and the conduct challenged here thus occurred in a political setting"); *see also Petersburg Cellular Partnership v. Board of Sup'rs of Nottoway County*, 205 F.3d 688, 694 (4th Cir. 2000) ("the zoning permit process . . . . is a legislative one, involving predictions, value preferences, and policy judgments").

The court is also unpersuaded by Mercatus' emphasis on the Board's decision to consider whether to grant developmental approval separately from site plan approval. According to Mercatus, Trustee Peters' views on how to proceed are suspect because he was a Lake Forest Hospital employee and Lake Bluff's zoning code (§ 10-2-6(E), Pl. Tab 16 at 33-39) does not support Trustee Peters' position. The fact that Trustee Peters was an interested party does not automatically create a material question of disputed fact that must go to a jury because it is not relevant to whether the Board was acting legislatively or adjudicatively. Moreover, if self-interest were dispositive and created an automatic fact question, orders granting summary judgment would be virtually non-existent.

Next, the zoning code simply provides a list of discretionary factors for consideration when making decisions. *See, e.g.*, § 10-2-6(E)(3)(a) ("The proposed use will not have a substantial or undue adverse effect upon adjacent property, the character of the area, or the public health, safety, and general welfare"). It neither contains procedural provisions contrary to the practice followed by the Board nor requires the legislature to "judicialize zoning." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d at 468 ("The decision whether and

what kind of land uses to permit does not have the form of a judicial decision. The potential criteria and considerations are too open-ended and ill-defined").

In sum, as the Fifth Circuit has recognized, "when a zoning board acts on an individual request for a variance, it appears in some sense to be making both a legislative and a judicial decision" since the focus on the individual case before the board gives "the process of determining whether a variance should be granted . . . distinctly adjudicative characteristics." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 934 (5th Cir. 1988). Nevertheless, zoning decisions are not necessarily adjudicative simply because they are fact-specific.

As discussed above, the undisputed facts in this case show that the Board's decision was inherently political and legislative in nature, and Mercatus' arguments to the contrary simply do not show that the rejection of zoning approval for Mercatus' project was an adjudicative decision. "[L]egislatures are free to range widely over ethical and political considerations in deciding what regulations to impose on society." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d at 468. The court declines to strip them of that power. This means that Mercatus cannot proceed with any antitrust claims based on actions taken to influence the Village Board.

### 2. Antitrust Claims Based on Non-Lobbying Conduct

Mercatus' federal claims are not limited to conduct directed at the Village Board. Instead, Mercatus asserts that when viewed in the aggregate, a jury could find that Lake Forest Hospital's non-petitioning conduct directed at physicians and media violates the antitrust laws.

At the motion to dismiss stage, the court considered Mercatus' allegations that Lake Forest Hospital allegedly: (1) persuaded physicians who had agreed to work at the Mercatus Center to back out of their agreements; (2) interfered with the business relationship between Mercatus and Evanston Northwestern Heathcare; (3) attempted to purchase the Mercatus Center land; (4) misrepresented that other purchasers were interested in purchasing the Mercatus Center land; (5) suggested agreements in restraint of trade with Mercatus in other markets outside of eastern Lake County; and (6) contacted another hospital to disparage Mercatus.

These allegations line up with the evidence presented by Mercatus at the summary judgment stage, including evidence indicating that Lake Forest Hospital's lobbying effort in opposition to the Mercatus project consisted of a Village of Lake Bluff prong, a physician-strategy prong, and a media-public relations prong. To the extent that Mercatus is repeating previously rejected arguments, the fact that the court previously relied on allegations in a complaint and accepted them as true, while today it is reviewing a summary judgment record, is irrelevant. The court stands by its prior order rejecting Mercatus' arguments and declines to revisit it.

This leaves Mercatus with one final arrow in its quiver: that the court erred by viewing its allegations regarding non-petitioning conduct individually and "in a vacuum." Mercatus Response at 4. According to Mercatus, the court must view the evidence regarding non-petitioning conduct in the aggregate, and when viewed in this manner, its antitrust claims are sufficient to withstand summary judgment.

In support, Mercatus directs the court's attention to *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962). In that case, the Supreme Court considered

whether plaintiff Continental Ore (a producer and distributor of a product) was damaged by the

defendants, who allegedly attempted to eliminate the plaintiff's suppliers. The Court held that

a jury had to determine whether the defendants had refused to deal with the plaintiff and

whether the plaintiff failed to take advantage of independent sources of supplies, explaining:

> It is apparent from the foregoing that the Court of Appeals approached
> Continental's claims as if they were five completely separate and unrelated
> lawsuits. We think this was improper. In cases such as this, plaintiffs should be
> given the full benefit of their proof without tightly compartmentalizing the
> various factual components and wiping the slate clean after scrutiny of each.
> The character and effect of a conspiracy are not to be judged by dismembering it
> and viewing its separate parts, but only by looking at it as a whole and in a case
> like the one before us, the duty of the jury was to look at the whole picture and
> not merely at the individual figures in it.

*Id*. at 698-99 (internal quotations and citations omitted).

The Seventh Circuit has recognized that the *Continental Ore* case "does not address

either antitrust standing or antitrust injury." *Id*. at 717. This is unhelpful to Mercatus, which

is attempting to use this case to shore up its position regarding antitrust injury. Nevertheless,

Mercatus is correct that in general, "courts should not be myopic in their assessment of

potential violations of the antitrust laws." *Kochert v. Greater Lafayette Health Services, Inc.*,

463 F.3d 710, 716 (7th Cir. 2006); *see also City of Mishawaka, Ind. v. American Elec. Power

Co., Inc.*, 616 F.2d 976, 986 (7th Cir. 1980) ("Injury need not be conclusively shown, but the

evidence [in total] must be sufficient to sustain the inference of injury to some extent").

Thus, to survive summary judgment, a plaintiff must point to sufficient evidence

showing that the events at issue comprise an anticompetitive scheme culminating in the

ultimate injury – here, the Village Board's decision to reject Mercatus' proposed physician

center. *See Kochert v. Greater Lafayette Health Services, Inc.*, 463 F.3d at 716-17. In an

attempt to do so, Mercatus asserts that the non-petitioning conduct had "a substantial adverse impact on competition." Response at 5. This sweeping statement ignores the fact that the main potential source of impact on competition was the rejection – by the Village Board – of zoning approval. The record does not tie the non-petitioning conduct noted by Mercatus (even if the court accepts them as true) to the Village Board's adverse action.[7]

In addition, as discussed in the court's prior order, misleading statements and public expressions of opinion about competitors' plans cannot provide the basis for an antitrust claim. *Arnett Physician Group, P.C., Greater Lafayette Health Services, Inc.*, 382 F. Supp. 2d 1092, 1096 (N.D. Ind. 2005) (rejecting contention that allegations of "'publicity campaign' against construction of a new hospital causes antitrust injury. Public expressions of opinion about competitors' plans cannot provide the basis for an antitrust claim and such conduct is clearly lawful"), *citing Schachar v. American Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989) ("[i]f such statements should be false or misleading or incomplete or just plain mistaken, the remedy is not antitrust litigation but more speech-the marketplace of ideas").

The court also adheres to its prior ruling that the refusal to deal with a competitor is not an antitrust violation. *Schor v. Abbott Labs*, 457 F.3d 608, 610 (7th Cir. 2006) ("antitrust law

---

[7] The court acknowledges Mercatus' assertion that Lake Forest Hospital provided false or misleading information to try to convince potential tenants to stay away. According to Mercatus, this meant that Mercatus lacked key tenants and thus could not have successfully proceeded even with the Village of Lake Bluff's approval. From an injury perspective, however, the Village did not give its approval. In any event, as discussed below, the actions at issue are misleading statements and expressions of opinion about competitors' plans and thus do not support a finding of antitrust injury.

does not require monopolists to cooperate with rivals . . . . Cooperation is a *problem* in antitrust, not one of its obligations") (emphasis in original).

Moreover, to the extent that Mercatus is alleging that Lake Forest Hospital entered into agreements in restraint of trade, *see* Pl. SOF ¶ 12, the court previously noted concerns regarding Mercatus' standing to pursue this argument. Mercatus did not address these concerns in its summary judgment filings, and the court will not construct arguments on its behalf. The court also notes that it appears that these facts are more germane to Mercatus' state law claims of tortious interference with Mercatus' prospective economic advantage based on alleged attempts by Lake Forest Hospital to affect its relationships with physicians and Evanston Northwestern Healthcare (Counts VI & VII).

For all of these reasons, the court finds that Lake Forest Hospital is entitled to summary judgment as to Mercatus' federal antitrust claims (Counts I—V).

### 3. State Claims

This leaves Mercatus' state law claims for tortious interference. If the court eliminates a plaintiff's federal claims, it may exercise its discretion and dismiss supplemental state law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("we pause to emphasize that it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). This is not an absolute rule. *Groce v. Eli Lilly & Co.*, 193 F.3d at 501. Nevertheless, given the disposition of the federal claims and the nature of the remaining state claims, the court, in an exercise of its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims.

### III. Conclusion

For the reasons stated above, Lake Forest Hospital's motion for summary judgment [#105] is granted as to Mercatus' federal claims (Counts I—V), and the court declines to exercise supplemental jurisdiction over Mercatus' state law claims (Counts VI & VII). The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE:  February 16, 2010

Blanche M. Manning
United States District Judge